[Civ. No. 4715. Fifth Dist. Dec. 11, 1981.]

SIERRA CLUB et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF KERN COUNTY et al.,
Defendants and Respondents;
MING CENTER INVESTMENT COMPANY, Real Party in Interest
and Appellant.

**COUNSEL**

Laurens H. Silver and Fredric P. Sutherland for Plaintiffs and Appellants.

Barry Steiner as Amicus Curiae on behalf of Plaintiffs and Appellants.

William C. Kuhs for Real Party in Interest and Appellant.

Ralph B. Jordan, County Counsel, D. N. Reid, Assistant County Counsel, and Robert Sams, Deputy County Counsel, for Defendants and Respondents.

OPINION

PETTITT, J.*—

STATEMENT OF THE CASE

This is an appeal from a judgment entered on February 21, 1979, denying plaintiffs' petition for writ of mandate, injunctive and declaratory relief. The chronology of events leading up to the denial of plaintiffs' petition is as follows.

On February 6, 1978, the Kern County Board of Supervisors (hereinafter designated Board) adopted resolution No. 78-83 and ordinance No. G-2523. The Board's actions of that date approved a zone change sought by real party in interest, Ming Center Investment Company (hereinafter designated Ming Center). The property is located a short distance west of urban Bakersfield in an area commonly called "Rosedale"; the action generally rezoned the property from agricultural to residential uses.

Shortly thereafter, petitioner and appellant Sierra Club, an organization called Project Land Use, and Francine Joy Lane (collectively designated hereafter as Sierra Club) filed the petition for writ of mandate and other relief in the superior court. The petition named Kern County Board of Supervisors, Kern County Planning Commission, Kern County Surveyor and County of Kern as respondents. They will hereinafter be collectively designated as Kern County. Ming Center and Jay Alvin Wheelan were named as real parties in interest. All parties stipulated that petitioners had standing to commence the proceeding pursuant to former Government Code section 65860, subdivision (b).[1]

After trial, judgment was entered denying any relief to Sierra Club. Both Sierra Club and Ming Center appealed. The appeal of Ming Center challenged the trial court's ruling that each party bear its own costs.

On April 22, 1981, Ming Center filed a motion to dismiss Sierra Club's appeal on the ground the principal issue of the appeal was moot.

*Assigned by the Chairperson of the Judicial Council.

[1]Section 65860, subdivision (b), has since been amended but is still in substantially the same form.

On April 30, 1981, Kern County filed a declaration in support of the motion to dismiss for mootness. The motion to dismiss was summarily denied by this court on June 4, 1981.

On August 14, 1981, this court ordered letter briefs on the following issue: Whether or not the alleged internal inconsistencies of the Kern County General Plan have been remedied by recent actions of the Kern County Board of Supervisors, and whether or not such actions render moot the issues raised by appellant Sierra Club. At the same time, this court notified all parties by letter of its proposal to take judicial notice of certain documents, including resolution No. 80-527 adopted November 4, 1980, by the Kern County Board of Supervisors, whereby it adopted the Rosedale Community General Plan and accompanying map as part of that plan, together with the Rosedale plan itself and said map. (The Ming Center property is within the area of the Rosedale plan and map.) None of the parties objected to taking judicial notice of those documents and the map. The public entity respondents (Kern County) requested that we take judicial notice of all documents pertaining to the county's Year 2000 General Plan (hereinafter called 2000 Plan) described in the declaration of the county's planning director, Randall L. Abbott, which declaration was attached to and made a part of Kern County's letter brief on the question of mootness, and which has been filed with this court.

We do take judicial notice of the Board's resolution No. 80-527, Rosedale Community General Plan and accompanying map. The respondent county's 2000 Plan, which is scheduled for adoption late in October 1981, has not been filed with the court, and we do not take judicial notice of it, but we do accept as true the representation of counsel for Kern County made at oral argument in this case that said 2000 Plan does not contain any "precedence clause." That representation has not been disputed by any party. A precedence clause was contained in the land use element of the Kern County General Plan in effect at all relevant times before and at the time of the lower court's entry of judgment in this action. It becomes clear hereinbelow that the propriety of the precedence clause is the key issue in this appeal. We also accept as true (nothing has been presented to us to the contrary) the declaration of Randall L. Abbott that the map prepared as part of the 2000 Plan eliminates inconsistencies between the current county-wide land use element map and the county-wide open space-conservation element map of the current general plan.

Pursuant to stipulation, this court has also taken judicial notice of the general plan guidelines adopted by the office of planning and research in September 1980.

The nexus of this cause is the so-called "precedence clause" contained in the Kern County land use element of its current general plan.

The county had adopted its initial (combined) open space-conservation element of its general plan in June 1972. In 1973, it adopted the land use element of the general plan.[2] At the time of the adoption of the latter element, it was realized by Kern County planning officials that the maps which were a part of each element would be inconsistent in some areas. Because of a lack of time to eliminate the known inconsistencies between the two maps and in an effort to resolve those inconsistencies, a provision was put in the text of the land use element which reads as follows: "If any conflict exists between the adopted open space and conservation elements and this land use element, this element should take precedence until the open space and conservation can be reevaluated and amended, if necessary." This provision contains the disputed precedence clause.

The aforementioned zoning ordinance No. G-2523 sought by Ming Center changed the zoning of the Ming Center subject property from A-1 (light agricultural) to M-P and E-3 R-S (mobilehome and estate-suburban-residential). This was consistent with the map of the land use element but inconsistent with the map of the open space conservation element in the area where the Ming Center property is located. As we shall discuss, the law requires zoning ordinances to be consistent with the county's general plan, and the general plan is required to be consistent within itself.

The trial court upheld the said precedence clause and, on the basis of it, found the zoning ordinance to be in compliance with the general plan and its open space and land use elements. In other words, that clause made the general plan internally consistent and made the ordinance consistent with the general plan.

The parties have briefed and argued before this court their respective positions on the meaning of Government Code section 65000 et seq.

---

[2]Section 65302 of the Government Code sets forth the elements a general plan must contain. Open space, conservation and land use are among those required elements.

and, particularly, sections 65300, 65302, 65300.5, 65566, 65567 and 65860, subdivisions (a) and (b), and their application to the facts and trial court judgment in this case. (All code sections cited hereinafter are to the Government Code, unless otherwise indicated.)

 Section 65300.5 requires that the elements of the general plan comprise an integrated internally consistent and compatible statement of policies.

The legislative intent in adopting the Open Space Lands Act §§ 65560-65570) is frustrated if counties can simply subordinate the open space element to other elements of the general plan. The Legislature expressed the importance of the open space elements in the following terms. "It is the intent of the Legislature in enacting this article: [¶] (a) To assure that cities and counties recognize that open-space land is a limited and valuable resource which must be conserved wherever possible. [¶] (b) To assure that every city and county will prepare and carry out open-space plans which, along with state and regional open-space plans, will accomplish the objectives of a comprehensive open-space program." (§ 65562.)

 Since the general plan was internally inconsistent, the zoning ordinance under review (ordinance No. G-2523) could not be consistent with such plan (§ 65860) and was invalid when passed.

However, the central issue on this appeal is moot as it pertains to the real party in interest, Ming Center, and zoning ordinance No. 2523. The adoption of the Rosedale plan in 1980 removed the precedence clause from the land use element covering that area, without which this dispute would never have occurred. Furthermore, the new map of the Rosedale plan area removed inconsistencies between open space-conservation and land use. The courts of this state have held that where a disputed statute, order or ordinance is repealed before an appeal is concluded the matter is moot. (*Equi* v. *San Francisco* (1936) 13 Cal. App.2d 140 [56 P.2d 590] [plaintiff sued for declaratory judgment and injunctive relief in an attack upon a city ordinance which imposed a tax on automobile supply stations; the lower court held the ordinance invalid and enjoined the collection of the tax; defendant appealed and, on appeal, a motion to dismiss for mootness was granted because the ordinance had been repealed]; *O'Neal* v. *Seabury* (1938) 24 Cal.App.2d 308 [74 P.2d 1082] [plaintiffs appealed from a judgment dismissing their action following an order sustaining a demurrer to their complaint

and a subsequent order of dismissal; the appeal was dismissed because the county ordinance which plaintiffs attacked had been superseded by regulation of the same subject matter under state law; the court held the issue had become moot].)

In *National Assn. of Wine Bottlers v. Paul* (1969) 268 Cal.App.2d 741 [74 Cal.Rptr. 303], the trial court had declared void certain marketing orders and enjoined their enforcement. Subsequent to the filing of an appeal, the marketing orders on which the case was based were terminated. The appellate court held this action rendered the issue moot, but reversed the judgment for the purpose of remanding the case to the trial court with directions to the court to dismiss the action. This was done in order to avoid an implied affirmance of the lower court's order and injunction. (*Id.*, at p. 747.)

■ The adoption of the Rosedale plan and new map in 1980 eliminated the issue as to the precedence clause and thereby eliminated the objectionable inconsistency between the open space-conservation map and the Ming Center zoning. That zoning is now consistent with the new Rosedale plan and map. The issue regarding the Ming Center's zoning is therefore moot. ■ As was stated by the *Wine Bottlers* court on page 746, "It is well settled that the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it (*Paul v. Milk Depots, Inc.*, 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924])."

■ We take notice of the apparent fact the Ming Center zoning is far more compatible with reality than is open space use of the Ming Center property. The trial court viewed the property and surrounding area, and during the trial the following exchange took place between the court and counsel for Sierra Club:

"THE COURT: Very frankly, my temptation, really, is to grant the motion that they have made, because I went out and looked at the property. I don't think there is any way in the world, if we remanded this back to the Board of Supervisors, they would reach any different conclusion. I just don't think its possible in view of the development in that area. They have a used car lot north of the property. They have a little beer joint which adjoins the property on the east. There is commercial prop-

erty in the area. Within a half a mile, there is a tract on Brimhall Road ending at Jenkins Road. There are at least fifteen houses along there, and there's a couple of places right there in the middle of the property. It just seems to me that it is not suitable for agriculture, let's put it that way.

"MR. SILVER: ... The Board, exercising its legislative functions, could change the plan to accord with the realities of the site if the Board, in its legislative judgment, deems that necessary. But I don't really think, your Honor, that it is incumbent on this court to speculate concerning what the Board would or would not do on remand. The only issue before this court is whether or not Section 65860 and those sections cited in our memorandum ... have been complied with in this case. So there is a very narrow question.

"THE COURT: Don't you concede that there is a common sense element to this matter, too?

"MR. SILVER: There is a legal issue posed here, your Honor, as to whether or not this project is consistent with the General Plan.

"THE COURT: And the legislative body said yes, it is."

■ A view by the court is evidence in the case and may alone support the findings. (*Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515 [20 Cal.Rptr. 638, 370 P.2d 342]; *Wheeler* v. *Gregg* (1949) 90 Cal.App.2d 348 [203 P.2d 37] [both are zoning cases].)

■ As part of the trial court's finding No. 3, we find the following language: "... the Ming Center land and the part of Rosedale in which it lies are not open space or agricultural areas but instead are (and for several years have been) parts of an area in transition to residential and commercial uses."

It would appear that the Rosedale plan and map adopted in 1980 properly took these matters into consideration at the same time it succeeded in rendering moot the issue before this court as to the Ming Center zoning.

We now turn our attention to whether the general challenge to the precedence clause is moot as to Kern County.

Sierra Club asserts it has standing in this action to challenge the precedence clause generally so as to prevent its application hereafter anywhere in Kern County. It is true that Sierra Club's position at trial, and its petition as amended before trial, did broadly and generally challenge the precedence clause. It even mentions the Tehachapi and Bear Mountain area of Kern County as "Another example . . . ." of inconsistency between the open space-conservation element map and the land use element map. However, except for *respondents'* exhibit A-2, all of the testimony and exhibits relating to the alleged inconsistency between the open space element and the land use element were with respect to the Ming Center property in the Rosedale area. The court's finding No. 9 stated, "No evidence adduced by anyone at the trial suggested the need or justification for, or wisdom of, a moratorium or any of the injunctive or mandatory relief sought by the petition."

In its findings, the court recognized the magnitude of the general plan problems being faced in Kern County with its more than 5 million acres of territory; the fact that the respondents were proceeding at great cost and effort to complete a new general plan with inconsistencies eliminated, and that it was then proceeding with appropriate dispatch without compulsion.

The court's conclusion of law No. 2 states: "No dispute exists as between any of the parties in respect to the admitted existence of conflicts among elements of the General Plan in parts of the County other than Rosedale, and declaratory relief in respect to such admitted conflicts is not required or available. Resolution, alleviation and removal of such conflicts is a matter for the ordinary administrative processes of local government, to which the plaintiffs are remitted [*sic*]."

It is clear to us this action was tried for the purpose of seeking redress for the respondents' action in granting the zoning requested by Ming Center. As we have stated, that matter is moot.

It is likewise clear the long labors of respondents and their consultants have, at last, been rewarded by the completion of the 2000 Plan. It would profit no one, nor serve any purpose of this court, to order the trial court to issue any writ or order at this time directed toward actions Kern County might take in zoning matters during the next several weeks in areas outside those covered by the Rosedale plan and map. Indeed, the court's decision could not become final before the 2000 Plan is scheduled to be adopted.

Appellants have undoubtedly accelerated the process of eliminating the precedence clause in Kern County, and to that extent served a useful public purpose. However, their successful contribution has helped render the primary issue of this case moot and nonjusticiable as to respondents.

Ming Center contends the trial court erred by ordering each party to bear its own costs.

Although the issue is moot as to the specific ordinance and as to Kern County, we should nevertheless adjudicate the issue if it is one of broad public interest that is likely to recur. (*Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 876 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392].) ■ We were informed during oral argument that there are approximately 470 local jurisdictions that have the obligation to adopt local plans. As noted earlier, pursuant to stipulation, this court has taken judicial notice of the general plan guidelines adopted by the office of planning and research in September 1980. This document, which is in excess of 300 pages, was prepared pursuant to legislative mandate to prepare, adopt, and periodically revise guidelines to assist local governments in preparing their general plans. (§ 65040.2.) The guidelines, which have statewide application, provide on page 12: "Called the internal consistency requirement, the law has several implications of paramount importance to the structure and content of the general plan. First, it implies that all elements of the general plan have equal legal status. For instance, the land use element and the open-space element cannot contain different land use intensity standards rationalized by statements such as 'if in any instance there is a conflict between the land use element and open-space element, the land use element controls.' Because the open-space element is not legally subordinate to the land use element, any conflicts between the two must be resolved within the general plan itself...."

It is a fair inference that if the matter is of sufficient general interest to include a prohibition against precedence clauses to be inserted in the general plan guidelines, it has enough public interest to justify an opinion of precedential value. We therefore hold that the precedence clause under consideration is void as not permitted under sections 65300.5, 65566, 65567 and 65860.

It is necessary to enter an appropriate order. We hold that the matter is moot as to Ming Center and to Kern County; therefore, it is not nec-

essary to remand for a modification of the judgment as to them, except as to costs, to which appellants are entitled. The judgment is reversed with instructions to award costs to appellants.

Franson, Acting P. J., and Andreen, J., concurred.