[Civ. No. 49524. First Dist., Div. Four. July 27, 1983.]

ALTERNATIVES FOR CALIFORNIA WOMEN, INC.,
Plaintiff and Appellant, v.
COUNTY OF CONTRA COSTA et al., Defendants and Respondents.

438

## COUNSEL

Steinhart, Falconer & Morgenstein, Morgenstein, Ladd & Jubelirer, Robert T. Fries, Lee Ann Huntington, Heller, Ehrman, White & McAuliffe, Stephen V. Bomse, Robert A. Rosenfeld, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz for Plaintiff and Appellant.

John B. Clausen, County Counsel, Elizabeth B. Hearey and John M. Milgate, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**RATTIGAN, J.**—The subject of this litigation is an ordinance which was initially enacted by the Board of Supervisors of defendant and respondent County of Contra Costa (County) prior to 1978. In its form as enacted, the ordinance prohibited door-to-door "soliciting" in the unincorporated area of the County between 7 p.m. and 8 a.m. Plaintiff and appellant Alternatives for California Women, Inc. (ACW), is a nonprofit California corporation which is organized and operated for charitable and political purposes. It distributes information about itself, and solicits funds, in "door-to-door canvassing" by its representatives.

ACW commenced this action against respondents (the County and its sheriff) in 1978, seeking (1) injunctive relief against the enforcement of the ordinance on the ground that it was unconstitutional and (2) a declaratory judgment to that effect. The action was submitted on stipulated evidence received at a nonjury trial. The trial court entered a judgment in which it denied injunctive relief and declared in effect that the ordinance was constitutional.

ACW appealed from the judgment. During the pendency of the appeal, and long after it had been fully briefed, the board of supervisors amended the ordinance to prohibit "soliciting" between "sunset and sunrise" instead of between 7 p.m. and 8 a.m. In proceedings to be described, this court

took judicial notice of the ordinance as amended. The appeal was thereupon argued and submitted. We have concluded that the issue properly before us is the validity of the ordinance *as amended,* and that the ordinance *as amended* is unconstitutional. We therefore reverse the judgment initially entered and remand the cause to the trial court with appropriate directions.

## THE PLEADINGS

ACW commenced the action by filing a verified "Complaint For Declaratory And Injunctive Relief." The defendants named in the complaint were the County; the sheriff; and "officers, agents, representatives, and employees of the County" sued as "DOES I through XX." In the first of two causes of action stated in separate counts, ACW alleged in pertinent part as follows:

"Plaintiff, ACW, is a non-profit California corporation formed to promote the social welfare by supporting issues and activities that provide residential, employment, therapeutic, legal and medical alternatives for battered women and their children.

"Plaintiff, ACW, has been and is presently trying to distribute information about its services and to solicit donations in . . . [the] . . . County. The most effective means of information distribution available to Plaintiff is door-to-door canvassing. This is because many potential beneficiaries of Plaintiff's services are bound [*sic*] to their homes by force or fear and have no significant alternative means of receiving such information. Door-to-door canvassing is also . . . [plaintiff's] . . . most effective means of soliciting donations.

"ACW's distribution and solicitation activities are protected by the guarantee of freedom of speech provided by the . . . United States Constitution and by the California Constitution . . . .

"Defendant . . . [County] . . . has enacted an ordinance, . . . Ordinance Code § 56-4.408, which . . . prohibits solicitation within the unincorporated area of the county except between the hours of 8 a.m. and 7 p.m."[1]

---

[1] ACW here quoted section 56-4.408 of the County's Ordinance Code, as follows:
"56.4-4.08 *Permit—Restricted premises and hours.* It is unlawful for any person to peddle or solicit at any premises within the unincorporated area of the county which are posted with a clearly visible sign bearing the words 'No Peddlers or Solicitors' or similar words of the same purport and effect. *Peddling and soliciting shall be limited to the hours between eight a.m. and seven p.m. Peddling or soliciting at any other time is prohibited."* (Italics added.)

On two occasions early in 1978, the County, "acting *through its Board of Supervisors and on the advice of . . .* the county Sheriff," had denied requests by ACW that the ordinance be amended "to extend the permissible hours of solicitation to 9:00 p.m."

ACW further alleged: The ordinance, "both facially and as it has been applied to restrain Plaintiff from distribution and solicitation, is overbroad and is an unconstitutional restriction of Plaintiff's right to freedom of speech." The County's "interest in limiting permissible hours of solicitation is not sufficiently compelling to justify such restriction of Plaintiff's right to freedom of speech. Further, . . . [the County's] . . . means of protecting such interest is not the least restrictive means available. It is sufficient that solicitation be prohibited on premises with 'no-solicitation signs,' which is the present rule for the houses of 8 a.m. to 7 p.m." ACW had no adequate remedy at law and would "suffer . . . irreparable injury in that Defendants have enforced and will continue to enforce" the ordinance.

In its second count, ACW incorporated the foregoing allegations by reference and added allegations to state a cause of action for a declaratory judgment to the effect that the ordinance was unconstitutional.

In the prayer of the complaint, ACW requested preliminary and permanent injunctions restraining the enforcement of the ordinance; a declaratory judgment to the effect that the ordinance "is unconstitutional on its face and/or as applied to Plaintiff [ACW] insofar as it prohibits solicitation after 7 p.m."; and general relief.

Respondents filed an answer in which they admitted material facts alleged in the complaint, including the enactment of the ordinance and the refusal to amend it; denied that the ordinance, "as written or as enforced, violates plaintiffs' [*sic*] right of freedom of speech"; and otherwise pleaded general denials.

## THE TRIAL

The action was tried at a brief hearing conducted in 1979. Both sides offered "testimony" in the form of written exhibits, and other documents, all of which were received in evidence by stipulation. Some of the exhibits containing written "testimony" were in the form of questions and answers. Others were declaratory. The several documents received support the recitals which follow.

*Evidence Introduced by ACW*

Sue Stephenson testified that she is ACW's "Canvass Coordinator" and a member of its board of directors. She described the organization and its activities as follows: "ACW is a nonprofit corporation that raises money for political lobbying and funding programs and services for battered women. In addition to seeking contributions, we pass out resource cards to residents explaining local services in their communities. We also explain current legislation which affects battered women and request signatures on petitions for use in lobbying. . . . We are totally funded by contributions received by door-to-door canvassing."

Ms. Stephenson further testified that the number of ACW's canvassers "varies from 5 to 30." They were "most likely to find residents at home . . . [i]n the evening after dinner from approximately 7:00 p.m. to 9:00 p.m." They had canvassed in the County between 7 and 9 p.m. "for about one month before we were aware of the 7:00 p.m. curfew." They stopped because "[w]e were told we would be arrested for violating the curfew." The canvassers were "very effective in finding residents at home" before they stopped, but thereafter "it was not practical to go door to door at all." The "only way to communicate with people . . . is through direct contact" at their homes. ACW's canvassers could not reach residents during the day because "economically we could not function this way."

Daniel B. Lambert testified that he is ACW's "Administrative Coordinator." He "canvass[es] to raise money for the organization . . . in all nine Bay Area counties." He had been "more successful in finding people at home" between 7 p.m. and 9 or 9:30 p.m. He had not been "successful . . . in contacting residents during the morning and afternoon hours."

*Respondents' Evidence*

Richard Rainey, respondent sheriff, testified as follows: "It is my opinion as an expert in law enforcement . . . that time restrictions on soliciting and peddling which limit these activities to the hours between 8:00 a.m. and 7:00 p.m. are useful, reasonable law enforcement mesures. They protect citizens' rights to privacy in their homes during the nighttime and evenings and serve as a deterrent to violent crimes." The ordinance was "required because it is well known . . . that many burglaries of homes and other crimes against citizens and their property are committed by persons allegedly going from door-to-door as peddlers or solicitors at night or in the morning. . . . The erection of 'No Peddling or Soliciting' signs by citizens would not be as effective a law enforcement device because many citizens

do not erect signs. Furthermore, in the evenings these signs may not be visible. Often, signs are not obeyed."

Testimony by Captain Moore, a deputy sheriff, may be summarized as follows: The sheriff had "received numerous complaints from citizens in the unincorporated area [of the County] because they were being annoyed or frightened by solicitors, especially after 7:00 p.m." The ordinance "aids in preventing serious crimes" because "[i]t is common knowledge among law enforcement officers that there is a clear link between door-to-door solicitors and peddlers and violent crime . . . at night and in the evening." The use of "No Soliciting or Peddling" signs had not been an "effective crime prevention device . . . at night and in the evening."

Holly Patterson testified that she lives with her husband and children in a "single family home" in Lafayette. "I often have solicitors and peddlers come to my door during the hours after 7:00 p.m." Ms. Patterson has been "annoyed" and "frightened by evening and late night strangers . . . ."

Paul Tracy, an "apartment manager" who lives in Martinez, testified as follows: "There are three easily visible 'No soliciting' signs posted where I live. The signs are not obeyed. We get frequent solicitors and peddlers. . . . I receive frequent complaints from my tenants about solicitors, especially in the evening."

Other documents received in evidence showed census and demographic information pertaining to the unincorporated areas of the County.

### FURTHER PROCEEDINGS AND THE APPEAL

The action was submitted on the evidence summarized above. The trial court subsequently filed a memorandum decision stating its determination to the effect that the ordinance was constitutional. Findings of fact and conclusions of law were not requested, and a judgment consistent with the memorandum decision was entered.[2]

ACW filed a timely notice of appeal from the judgment. Briefs were filed in due course, and the cause was regularly set for oral argument late in

---

[2]The judgment provides in pertinent part: "IT IS ORDERED, ADJUDGED, DECLARED, AND DECREED THAT: [¶] 1. The injunction sought in this action be denied. [¶] 2. Contra Costa County Ordinance Code § 56-4.408 is neither unconstitutional on its face nor as applied to plaintiff [ACW]. The time restrictions imposed by said ordinance on door-to-door solicitation are reasonable regulations on time, place, and manner, based on . . . substantial and compelling governmental interests."

1982. Before it was argued, respondents moved this court for an order to the effect that judicial notice would be taken of the fact that on November 16, 1982, the board of supervisors of the County had amended the disputed ordinance effective December 16, 1982.[3]

This court granted the motion, thereby taking judicial notice of the ordinance as amended; postponed the pending oral argument; and requested supplemental briefing on questions raised by the adoption of the amendment during the pendency of the appeal. The requested briefs were filed, and the appeal was argued and submitted.

REVIEW

I. *The appeal from the judgment validating the ordinance as enacted is not to be dismissed for mootness. The question to be decided is whether the ordinance as amended is constitutional.*

The principal question on which we requested supplemental briefing was whether the postjudgment amendment of section 56-4.408 of the County Ordinance Code had rendered the appeal moot. ■ "It is settled that 'the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' [Citations.]" (*Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924]; see also *Sierra Club* v. *Board of Supervisors* (1981) 126 Cal.App.3d 698, 705 [179 Cal.Rptr. 261].)

■ An appeal may become moot if an ordinance or statute which constitutes the basis for the judgment under review is amended during the pendency of the appeal. (See *Callie* v. *Board of Supervisors* (1969) 1 Cal.App.3d 13, 18 [81 Cal.Rptr. 440]; *Jordan* v. *County of Los Angeles* (1968) 267 Cal.App.2d 794, 799 [73 Cal.Rptr. 516]; *Smokler* v. *City of Los Angeles* (1951) 106 Cal.App.2d 438, 439 [235 P.2d 42]; 6 Witkin, Cal.

---

[3]Respondents showed on this motion that section 56-4.408 of the County's Ordinance Code had been amended to read as follows on and after December 16, 1982: "56-4.408 *Permit—Restricted premises and hours.* No person shall peddle or solicit: (1) at any premises which are posted with a clearly visible sign bearing the words 'No Peddlers or Solicitors' or words of the same import, or (2) between sunset and sunrise." (Compare the former text quoted in fn. 1, *ante.*)

Procedure (2d ed. 1971) Appeal, § 466, p. 4421; see also *Bell* v. *Board of Supervisors* (1976) 55 Cal.App.3d 629, 631, 634-637 [127 Cal.Rptr. 757].) The appeal may not be moot if the amendment includes, continues, or reenacts a material part of the enactment which was considered by the lower court. (See *In re Dapper* (1969) 71 Cal.2d 184, 189 [77 Cal.Rptr. 897, 454 P.2d 905]; *Montalvo* v. *Madera Unified Sch. Dist. Bd. of Education* (1971) 21 Cal.App.3d 323, 329 [98 Cal.Rptr. 593].)

It appears that the postjudgment amendment of the ordinance has produced the latter situation here. The "material part" of the enactment is the prohibition of "peddling and soliciting" in evening and nighttime hours. The prohibition has been retained in the ordinance as amended, and the only change is in the designation of the times at which the prohibition is in effect.[4] (See fn. 3, *ante*.) There has been no showing that the limited change significantly affects the "material part" of the ordinance for purposes of testing its constitutionality. On this basis, the amendment has not rendered the appeal moot. (See *In re Dapper, supra,* 71 Cal.2d 184 at p. 189; *Montalvo* v. *Madera Unified Sch. Dist. Bd. of Education, supra,* 21 Cal.App.3d 323 at p. 329.)

■ In any event, we have discretion to consider a question which is technically moot but which is "an issue of continuing public interest that is likely to recur in other cases" and is "likely to affect the future rights" of the parties before us. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193]; see also *Libertarian Party* v. *Eu* (1980) 28 Cal.3d 535, 539 [170 Cal.Rptr. 25, 620 P.2d 612]; *Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 763 [150 Cal.Rptr. 785, 587 P.2d 227]; *Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213]; *City of Monterey* v. *California Coastal Com.* (1981) 120 Cal.App.3d 799, 805-806 [174 Cal.Rptr. 798]; *Kriz* v. *Taylor* (1979) 92 Cal.App.3d 302, 308 [154 Cal.Rptr. 824].) A challenge of the validity of an enactment regulating the public solicitation of funds presents a question of general public interest. (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 542 [63 Cal.Rptr. 21, 432 P.2d 717].) The parties have made it clear that they will continue to litigate the validity of the amended ordinance if the present appeal is dismissed. (See *Butler* v. *County of Los Angeles* (1981) 116 Cal.App.3d 633, 637 [172 Cal.Rptr. 244]; *People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462 [89 Cal.Rptr. 290].)

---

[4]The amendment also deleted language in section 56-4.408 which indicated that it was applicable in the "unincorporated area" of the County. (See fns. 1 and 3, *ante*.) As will appear, the full context of the section establishes that it is effective in the unincorporated area only.

The judgment from which ACW appeals denied its application for an injunction. (See fn. 2, *ante.*) ■ On an appeal from a judgment granting or denying an injunction, the reviewing court applies the law which is current at the time of review. (See *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6 [138 Cal.Rptr. 53, 562 P.2d 1302]; *White* v. *Davis* (1975) 13 Cal.3d 757, 773, fn. 8 [120 Cal.Rptr. 94, 533 P.2d 222]; *M Restaurants, Inc.* v. *San Francisco Local Joint Exec. Bd. Culinary etc. Workers* (1981) 124 Cal.App.3d 666, 673-674 [177 Cal.Rptr. 690].)

For all these reasons, we conclude that the appeal should not be dismissed as moot and that the question before us is whether the ordinance *as amended* is constitutional.

II. *The question requires examination of the full statutory context in which the amended ordinance appears.*

We have seen that ACW initially limited its constitutional challenge to section 56-4.408 of the County Ordinance Code, and that this section alone was amended during the pendency of the appeal. (See fns. 1 and 3 and the accompanying texts, *ante.*) The section was apparently dependent on related provisions of the ordinance code for definitions and other matters pertaining to its applicability. At oral argument, we therefore asked respondents to provide us with the full context of the section. They filed a certified copy of the entire chapter of the ordinance code in which section 56-4.408 appeared as enacted and now appears as amended. It is chapter 56-4, which is entitled "Solicitors and Peddlers."[5]

The chapter commences with article 56-4.2 (Definitions), which includes sections 56-4.204 and 56-4.206. Section 56-4.204 provides in pertinent part: "'Peddler,' as used in this chapter, means and includes any person who travels . . . from door to door, house to house, place to place or street to street, carrying . . . merchandise or other personal property of any nature whatever, offering . . . the same for sale or making sales and delivering articles to purchasers . . . ."

Section 56-4.206 provides in pertinent part: "'Solicitor,' as used in this chapter, means and includes any person who travels . . . from door to door,

---

[5]This court may take judicial notice of chapter 56-4 in its entirety. (Evid. Code, § 452, subd. (b); *id.*, § 459, subd. (a); *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 24 [157 Cal.Rptr. 706, 598 P.2d 866].) Our request at oral argument complied with the procedural requirements. (See Evid. Code, § 455, subd. (a); *id.*, § 459, subd. (b).) We take judicial notice of the chapter accordingly.

house to house, place to place or street to street, taking or attempting to take subscriptions, contracts of sale, or orders for the sale of . . . merchandise or other personal property of any nature whatever for future delivery, or for services to be furnished or performed in the future . . . . 'Solicitor' includes . . . persons *soliciting funds* or otherwise peddling *or soliciting* for religious, *political or charitable purposes.*'' (Italics added.)

The next part of chapter 56-4 is article 56-4.4 (Permit—General Requirements), which commences with sections 56-4.402 and 56-4.404. Section 56-4.402 provides in pertinent part that ''[i]t is unlawful for any person to engage in the business of peddler or solicitor within the unincorporated area of the county . . . without first obtaining a permit therefor as provided in this chapter.'' As pertinent here, however, section 56-4.04 provides that with the exception of section 56-4.408 (the presently challenged provision which prohibits ''soliciting'' between sunset and sunrise), chapter 56.4 ''shall not apply to: . . . . [¶] (7) Persons soliciting funds or peddling or soliciting goods or publications for the sole and bona fide purpose of propagating a religious or political faith, doctrine or belief *or for charitable purposes,* provided that persons soliciting funds for such . . . purposes turn over not less than seventy-five percent of all funds solicited to such religious, *political or charitable* purpose [*sic*].'' (Italics added.)

The remaining articles of the chapter deal principally with its permit requirements. It appears from the provision just quoted (§ 56-4.04, subd. (7)) that ACW is exempt from these requirements by reason of its ''charitable purposes.'' As will also appear, however, the requirements are pertinent to the constitutionality of section 56-4.408 (which prohibits ''soliciting'' between sunset and sunrise by anyone, ACW included). We therefore summarize the remaining articles in the margin.[6]

---

[6]Article 56-4.6 (Permit—Application) provides that an ''[a]pplication for the permit required by this chapter shall be by declaration under penalty of perjury in writing on a form to be provided by the sheriff.'' The form ''shall'' show detailed ''information,'' including facts pertaining to the applicant; his ''business'' and its ''nature''; a statement of his criminal record, if any; two personal photographs; and ''the applicant's right thumbprint.''

As pertinent here, article 56-4.8 (Permit—Issuance) provides as follows: An applicant ''shall'' pay a specified ''application fee'' to the sheriff, who ''may'' investigate the ''moral character and business responsibility of the applicant.'' The sheriff ''shall'' deny an application for specified causes shown in the investigation. If issued, a permit ''shall, be valid for not more than one year'' and is not transferable. ''Every applicant shall at all times when engaged in peddling or soliciting activities, wear an identification card supplied by the sheriff attached to his clothing so that it is easily visible, . . . and at all times carry the permit issued hereunder and exhibit it on request to any person.''

Article 56-4.10 (Fees and Bonds) provides that an applicant who is approved by the sheriff ''shall'' pay specified ''permit fees'' to the County tax collector. He ''shall'' also file with

III. *The ordinance as amended is unconstitutional.*

The three points next enumerated and discussed were initially made by ACW among its contentions on appeal that the ordinance *as enacted* was unconstitutional. For the reasons previously stated, we address each of these points to the ordinance *as amended.*

(1)

ACW contends that the ordinance is unconstitutional because it "bears no 'substantially relevant connection' to the interests which it is intended to protect . . . ." (We here quote a caption in the opening brief.) This contention must be sustained.

Freedom of speech is a fundamental right which is guaranteed by both the federal and state Constitutions. (See U.S. Const., 1st and 14th Amends.; Cal. Const., art. I, § 2.) First Amendment rights extend to door-to-door dissemination of information, printed matter, and ideas (see, e.g., *Schaumberg* v. *Citizens for Better Environ.* (1980) 444 U.S. 620, 626-632 [63 L.Ed.2d 73, 80-85, 100 S.Ct. 826]; *Martin* v. *Struthers* (1943) 319 U.S. 141, 143 [87 L.Ed. 1313, 1316-1317, 63 S.Ct. 862]; *Van Nuys Pub. Co.* v. *City of Thousand Oaks* (1971) 5 Cal.3d 817, 821 [97 Cal.Rptr. 777, 489 P.2d 809]), and to the solicitation of financial contributions in conjunction with these activities.[7] (See, e.g., *Schaumberg* v. *Citizens for Better Environ., supra,* at pp. 632-633 [63 L.Ed.2d at pp. 84-85]; *Hillman* v. *Britton* (1980) 111 Cal.App.3d 810, 816-817 [168 Cal.Rptr. 852].)

It is true, as respondents point out, that First Amendment rights are not absolute or unlimited. (See *Curtis Publishing Co.* v. *Butts* (1967) 388 U.S. 130, 150-151 [18 L.Ed.2d 1094, 1108-1109, 87 S.Ct. 1975]; *Times Film Corp.* v. *Chicago* (1961) 365 U.S. 43, 47 [5 L.Ed.2d 403, 406, 81 S.Ct. 391]; *In re Cox* (1970) 3 Cal.3d 205, 223 [90 Cal.Rptr. 24, 474 P.2d 992].) Door-to-door canvassing may be subjected to regulation to "protect from danger or to protect the peaceful enjoyment of the home." (*Hynes* v. *Mayor*

---

the sheriff a prescribed "liability insurance policy or bond . . . in the sum of five thousand dollars to protect adequately the interests of the county and the public."

In article 56-4.12 (Enforcement), the sheriff is vested with the "primary responsibility" to enforce the provisions of the chapter. He is also granted the authority to revoke a permit "at any time" for any of several specified causes. The causes include a "[v]iolation of any provision" of the chapter or "[c]onducting the activity authorized by the permit in an unlawful manner . . . ."

[7]As used here and later in this opinion, the term "First Amendment rights" refers to the rights guaranteed by the free speech provisions of the United States and California Constitutions alike.

*of Oradell* (1976) 425 U.S. 610, 619 [48 L.Ed.2d 243, 252, 96 S.Ct. 1755]; see *Breard* v. *Alexandria* (1951) 341 U.S. 622, 637, fn. 22 [95 L.Ed. 1233, 1245, 71 S.Ct. 920]; *Braxton* v. *Municipal Court* (1973) 10 Cal.3d 138, 149-150 [109 Cal.Rptr. 897, 514 P.2d 697].) However, such regulation of constitutionally protected activities must be narrowly drawn to promote compelling and substantial state interests. (See *Consolidated Edison Co.* v. *Public Serv. Comm'n* (1980) 447 U.S. 530, 540 [65 L.Ed.2d 319, 329, 100 S.Ct. 2326]; *First National Bank of Boston* v. *Bellotti* (1978) 435 U.S. 765, 786 [55 L.Ed.2d 707, 724, 98 S.Ct. 1407]; *People* v. *Glaze* (1980) 27 Cal.3d 841, 845-846 [166 Cal.Rptr. 859, 614 P.2d 291]; *People* v. *Privitera* (1979) 23 Cal.3d 697, 702 [153 Cal.Rptr. 431, 591 P.2d 919, 5 A.L.R.4th 178].)

■ Residential privacy and the prevention of crime are proper governmental interests. (*Hynes* v. *Mayor of Oradell, supra,* 425 U.S. 610 at p. 619 [48 L.Ed.2d 243 at p. 252].) The effect of the ordinance as a prohibition against soliciting after sunset abridges ACW's First Amendment rights without protecting the residents' privacy from intrusion by persons who are not "peddlers" or "solicitors" as defined in chapter 56.4. Moreover, the limitation of the ordinance to "peddlers" and "solicitors," as thus defined, is insufficiently related to the deterrence of crime to justify its effect on First Amendment rights. As ACW points out, "[i]t is simply inconceivable that one approaching a house with a criminal purpose would be given pause by an Ordinance which would allow him to canvass door-to-door so long as he did not append an appeal for funds to his purported message. Nor will common experience support the dubious claim that posing as a solicitor of funds affords one a greater opportunity to commit a crime than would, say, posing as a pollster seeking to administer a lengthy questionnaire."

The County's interests can be advanced by less restrictive means which do not entail diminution of First Amendment rights. These include enforcement of existing laws against fraud (see Pen. Code, § 484), trespass (Pen. Code, § 602), breach of the peace, and any other substantive offenses which might be committed. (See *Schaumberg* v. *Citizens for Better Environ., supra,* 444 U.S. 620 at pp. 637-638 [63 L.Ed.2d 73 at pp. 87-88]; *Hynes* v. *Mayor of Oradell, supra,* 425 U.S. 610 at pp. 618-620 [48 L.Ed.2d 243 at pp. 251-253]; see also *Carroll* v. *Princess Anne* (1968) 393 U.S. 175, 180-181 [21 L.Ed.2d 325, 330-331, 89 S.Ct. 347].) The County may adopt appropriate registration and identification procedures to protect its residents against wrongdoing by spurious solicitors (see *Hynes* v. *Mayor of Oradell, supra,* at pp. 618-619 [48 L.Ed.2d at pp. 251-252]), and it has enacted a comprehensive regulatory scheme which serves that purpose. (See fn. 6 and the accompanying text, *ante.*) The County may also "punish those who call

at a home in defiance of the previously expressed will of the occupant."
(*Martin* v. *Struthers, supra,* 319 U.S. 141 at p. 148 [87 L.Ed. 1313 at
p. 1319]; *Van Nuys Pub. Co.* v. *City of Thousand Oaks, supra,* 5 Cal.3d
817 at p. 827; see *Rowan* v. *Post Office Dept.* (1970) 397 U.S. 728, 736-
737 [25 L.Ed.2d 736, 742-743, 90 S.Ct. 1484].)

In light of the less restrictive alternative available to the County for the
furtherance of its legitimate governmental interests, the challenged ordi-
nance is unconstitutional because it is not drawn as narrowly as possible to
avoid infringing First Amendment rights. (See *Schaumberg* v. *Citizens for
Better Environ., supra,* 444 U.S. 620 at p. 637 [63 L.Ed.2d 73 at pp. 87-
88]; *People* v. *Glaze, supra,* 27 Cal.3d 841 at pp. 846-849; *Van Nuys Pub.
Co.* v. *City of Thousand Oaks, supra,* 5 Cal.3d 817 at p. 826.) Similar
enactments have recently been held unconstitutional, on virtually identical
grounds, against the same arguments respondents advance here. (See *Citi-
zens for a Better Environ.* v. *Village of Olympia* (N.D.Ill. 1980) 511
F.Supp. 104, 106-108; *Connecticut Citizens, etc.* v. *Town of Southington*
(D.Conn. 1980) 508 F.Supp. 43, 45-47.)

(2)

◼ ACW also contends that the ordinance is unconstitutional because it
"embodies a content-based discrimination between . . . categories of
speech" in that it "distinguishes between speech merely conveying infor-
mation on the one hand and speech conveying information in conjunction
with a request for funds or contributions on the other." We agree.

Time, manner, and place regulations must be applicable to all speech
without regard to content. (*Consolidated Edison Co.* v. *Public Serv.
Comm'n, supra,* 447 U.S. 530 at p. 536 [65 L.Ed.2d 319 at p. 327].) The
challenged ordinance permits unlimited access by persons who wish to ap-
proach residents about random subjects, but it does not do this for persons
or organizations soliciting funds (such as ACW). The ordinance discrimi-
nates on the basis of the content of a speaker's message to the extent that a
person who literally *solicits* from residents is regulated but one who seeks
only a receptive listener is not. This disparity has the effect of making the
ordinance constitutionally deficient. (See *Consolidated Edison Co.* v. *Public
Serv. Comm'n, supra,* 447 U.S. 530 at pp. 536-540 [65 L.Ed.2d 319 at
pp. 327-329]; *Carey* v. *Brown* (1980) 447 U.S. 455, 460-463 [65 L.Ed.2d
263, 269-271, 100 S.Ct. 2286]; *Police Department of Chicago* v. *Mosley*
(1972) 408 U.S. 92, 99-102 [33 L.Ed.2d 212, 218-220, 92 S.Ct. 2286].)

(3)

ACW finally contends that the ordinance unconstitutionally infringes on the First Amendment rights of residents of the County to receive communications from ACW. This argument is also correct.

The First Amendment requires that the decision as to what communication a resident will receive must be made in the first instance by the resident himself, and that this decision cannot be usurped by government. (*Martin* v. *Struthers, supra,* 319 U.S. 141 at pp. 143-148 [87 L.Ed. 1313 at pp. 1316-1319]; *Van Nuys Pub. Co.* v. *City of Thousand Oaks, supra,* 5 Cal.3d 817 at pp. 826-827.) The ordinance is unconstitutional because it has the proscribed effect.

Other contentions made on the appeal need not be reached. We have seen that the original ordinance (i.e., § 56-4.408 of the Contra Costa County Ordinance Code as enacted in the first instance) is no longer in effect. Reversal of the judgment validating it is warranted for this reason alone. We have also held that the ordinance as amended is unconstitutional. Because its constitutional defects appear on its face, it is not justified by any of the evidence heretofore received with regard to the ordinance as enacted. For the same reason, we perceive no possibility that it might be justified by additional evidence. We therefore direct the trial court, on remand, to enter a judgment granting the injunctive relief sought by ACW and declaring that section 56-4.408 of the Contra Costa County Ordinance Code, as amended, is unconstitutional for the reasons expressed herein.

The judgment under review is reversed. The cause is remanded to the superior court with directions to enter a judgment in favor of plaintiff and appellant Alternatives for California Women, Inc., consistent with this opinion.

Caldecott, P. J., and Poché, J., concurred.

On August 26, 1983, the opinion was modified to read as printed above.