Opinion
NEWMAN, J.
Statement of the Case
On January 26, 1984, a complaint was issued alleging that Donald L. Green and American Youth Sports Foundation, a corporation, between October 1, 1983, and December 31, 1983, violated Penal Code section 532d (count I) and Long Beach Municipal Code section 5.22.120 (count II).
On February 15, 1984, the defendants filed a demurrer to the complaint challenging the validity of the Long Beach ordinance on its face and as applied to defendants. Defendants contended that the ordinance unconstitutionally infringed on the defendants’ freedom of speech under the First Amendment to the United States Constitution and under the similar provi *Supp. 9 sion of the California Constitution, article I, section 2. On February 23, 1984, the demurrer was overruled.
Jury trial commenced on May 8, 1984. On May 21, 1984, the jury found each defendant guilty on both counts.
On June 25, 1984, the trial court sentenced the corporation, American Youth Sports Foundation, to pay a fine of $500 plus penalty assessments as to each count. The court suspended imposition of sentence as to Green on count I, granted summary probation for three years on condition that he spend 90 days in jail and engage in no fundraising activities. On count II, the court suspended imposition of sentence for three years, but reserved the right to impose sentence if the sentence on count I was set aside.
Summary of Facts Pertinent to the Constitutionality of the Ordinance
On or about January 1983, defendant American Youth Sports Foundation (A.Y.S.F.) by its president, defendant Don L. Green, submitted an application for a charitable-solicitation permit to the City of Long Beach. This application was denied by the Long Beach City Manager on March 3, 1983, pursuant to the prior version of Long Beach Municipal Code section 5.22.060(B)(3) on the ground that defendant Green was found to be a person of “immoral character.” This conclusion was presumably based upon the fact that defendant Green was convicted of a felony in 1962. The ordinance was amended on October 11, 1983.
Long Beach Municipal Code section 5.22.050, as amended October 11, 1983, prohibits any person from making any charitable solicitation unless a permit to solicit has been obtained from the city manager within one year of and at least ten days prior to the beginning of such solicitation.
In order to obtain a permit, an applicant must file a notice of intention to solicit, setting forth in such notice certain information described in section 5.22.050 as well as any other information the city manager may require.
Long Beach Municipal Code section 5.22.060(A) empowers the city manager or his representative to investigate the allegations of the notice of intention or any statements or reports filed with the police department *Supp. 10 pertaining to the solicitation, and to inspect books, accounts, and records of the applicant.
Long Beach Municipal Code section 5.22.060(B) requires the city manager to deny a permit if he finds that any one of seven conditions exists.
Long Beach Municipal Code section 5.22.060(B) (3) now requires the city manager to deny a permit if he finds that the applicant, or any of the applicant’s officers, agents, employees, solicitors, associates, managers, conductors or promoters “has been convicted of a felony.”
If an applicant uses paid solicitors, an additional registration requirement is imposed by Long Beach Municipal Code section 5.22.071. Such paid solicitors may not solicit unless they are first registered with the police department. Long Beach Municipal Code section 5.22.071(B) provides that no person shall be registered as a paid solicitor unless he first furnishes to the police department a statement under penalty of perjury that he has not been convicted of any felony or any offense involving fraud, theft or misrepresentation.
In addition to the requirement that individual solicitors be registered and bonded, the organization itself is required by Long Beach Municipal Code section 5.22.051 to file and maintain a bond in the sum of $5,000 if it uses paid solicitors.
Defendant Green was convicted of a felony in 1962. Green is the president of A.Y.S.F. Therefore, the city manager was required by the ordinance to, and he did, deny an application submitted by A.Y.S.F.
Long Beach Municipal Code section 5.22.100 also provides that (1) no promoter shall receive as compensation in excess of 25 percent of the gross receipts of any solicitation he directs or manages; (2) solicitors shall not receive as compensation more than 25 percent of all monetary contributions received by such solicitor; and (3) aggregate compensation for both the promoter and all solicitors shall not exceed 25 percent of all monetary contributions received, exclusive of costs and expenses authorized under the ordinance.
The evidence showed that Green directed solicitations for contributions to A.Y.S.F. by solicitors paid in excess of 25 percent of what they received; that compensation and expenses amounted to not less than 65 percent of contributions received, and that solicitations were made without a permit.
*Supp. 11 Contentions on Appeal*
Discussion
1-8*
9. The Long Beach Municipal Code provision restricting the solicitation of charitable contributions is unconstitutional thereby requiring the reversal of defendants’ convictions on count II.
Defendants demurred to that part of the complaint alleging a violation of Long Beach Municipal Code section 5.22.120. The demurrer was overruled. Defendants assert that defendants could not be prosecuted under the Long Beach ordinance because the statute is unconstitutional. Defendants claim the provision violates both the state and federal Constitutions because it impermissibly invades freedom of speech. We agree and reverse defendants’ convictions on count II of the complaint.
The Long Beach ordinance is infirm in two respects. First, it places a percentage limitation on the proportion of contributions which may be retained by solicitors as compensation and for expenses. Second, the ordinance bars issuance of a permit to solicit to any organization which uses paid solicitors and in which a member of its board or any participant has suffered any felony conviction during his lifetime. It is the city manager to whom applications for a permit to solicit are presented and who decides to issue such permits. No discretion is afforded the city manager but to deny a permit to an organization the president of which has suffered a felony conviction, and to deny a permit if the percentage limitations are exceeded.
 Such limitations and restrictions are overbroad. Charitable solicitation is a protected First Amendment activity, notwithstanding the claims of the People that charities may be divided into two classes and that the ordinance may be protected from overbreadth attack by limiting its *Supp. 12 application only to those charities which do not encompass advocacy as part of their program.
The contentions of the prosecutor are disposed of by the United States Supreme Court in Schaumburg v. Citizens for Better Environ. (1980) 444 U.S. 620, 633 [63 L.Ed.2d 73, 85, 100 S.Ct. 826], The court states: “The issue ... is not whether charitable solicitations in residential neighborhoods are within the protections of the First Amendment. It is clear that they are. [Citation omitted.]” The ordinance at issue in the Schaumburg case is one which denied a charitable solicitation permit to charities which devoted less that 75 percent of contributions to the purpose of the charity, less expenses, which included compensation of employees. The Village of Schaumburg claimed that Citizens for a Better Environment (CBE) expended so much of its resources for the benefit of its employees that it could have been appropriately deemed an organization existing for private profit rather than for charitable purposes. The Supreme Court stated: “... CBE was entitled to its judgment of facial invalidity if the ordinance purported to prohibit canvassing by a substantial category of charities to which the 75 percent limitation could not be applied consistently with the First and Fourteenth Amendments, even if there was no demonstration that CBE itself was one of these organizations. ” (Schaumburg, supra, 444 U.S. at pp. 633-634 [63 L.Ed.2d at p. 85] fn. omitted, italics added.)
Unlike the Village of Schaumburg, Long Beach may serve such interest as it perceives in protecting the public from fraud and crime, which are substantial interests, but only by measures less destructive of First Amendment interests. (Schaumburg v. Citizens for Better Environ., supra, 444 U.S. at p. 636 [63 L.Ed.2d at p. 87].) With respect to the efforts of the People to save the Long Beach ordinance by interpreting it so as to apply only to those charitable organizations which do not engage in any kind of research, advocacy or public education, Schaumburg provides that more precise measures are required to separate one kind of charity from the other. “The Village may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. [Citations omitted.]” (Schaumburg, supra, 444 U.S. at p. 637 [63 L.Ed.2d at pp. 87-88].)
The People urge that two classes of charities exist and that the Long Beach ordinance is applicable only to one. How the two classes are to be identified by the city attorney is not set forth. It is highly questionable that the distinctions urged by the People are capable of being made consistent with First Amendment requirements. (See Alternatives for California *Supp. 13 Women, Inc. v. County of Contra Costa (1983) 145 Cal.App.3d 436, 450 [193 Cal.Rptr. 384].)
Moreover, in Secretary of State of Md. v. J. H. Munson Co. (1984) 467 U.S. 947 [81 L.Ed.2d 786, 104 S.Ct. 2839], the United States Supreme Court dealt with a Maryland statute which prohibited a charitable organization, in connection with fundraising, from paying expenses of more than 25 percent of the amount raised, but authorized a waiver of this limitation where it would effectively prevent the organization from raising contributions. J. H. Munson Company is a professional fundraiser for various Maryland customers. Munson brought suit alleging that the Maryland limitation violated the First and Fourteenth Amendments.
The United States Supreme Court held that the statute was unconstitutionally overbroad, and that its percentage restriction on charitable solicitation was an unconstitutional limitation on protected First Amendment solicitation activity. The court went on to hold that the waiver provision, which does not exist in the Long Beach ordinance, did not save the statute because charitable organizations, which have high solicitation and administrative costs due to information, dissemination, discussion, and advocacy of public issues, remained barred by the statute from carrying on protected First Amendment activities.
Again, in the context of the People’s claim that there are two classes of charities which can be distinguished, the Supreme Court found that the Maryland statute could not distinguish organizations whose high fundraising costs are not due to protected United States First Amendment activities from those whose high costs are. The vice of the statute was found to be that it operated on a fundamentally mistaken premise that high solicitation costs are an accurate measure of fraud. The conclusion is inescapable that the Long Beach ordinance may not be saved by the methods suggested by the People.
Even if the percentage limitation provision did not render the Long Beach ordinance unconstitutional, the prohibition against anyone with a prior felony conviction from being either a paid solicitor or a principal of the charitable organization would do so. The vice of the ordinance is that no discretion is provided to the city attorney to consider either rehabilitation (cf. Bus. & Prof. Code, § 480 et seq.), the nature of the felony conviction, or matters such as its remoteness in time, in determining whether the purpose of the ordinance, to prevent fraud or theft, is achieved by denial of the *Supp. 14 permit. It is clear that because First Amendment activity is involved, only the most narrowly drawn ordinance designed to accomplish purposes that are legitimate, consistent with First Amendment requirements, is constitutional. In an analogous context, our Supreme Court stated: “... [S]ince a denial of a license would prohibit petitioner from engaging in an activity protected by the First Amendment, it could only be justified, even under a narrowly drawn ordinance, if permitting a person who had been convicted of a crime involving obscenity to operate a bookstore constituted a clear and present danger of a serious, substantive evil. [Citations omitted.] No such clear and present danger appears. We cannot assume that because petitioner was once convicted of violating Penal Code section 311.2, he will violate it again, or that if he does so criminal sanctions will not afford an adequate remedy. [Citation omitted.]” (Perrine v. Municipal Court (1971) 5 Cal.3d 656, 664-665 [97 Cal.Rptr. 320, 488 P.2d 648].) Similarly, with respect to protecting against fraud in charitable solicitations, the fact of a prior felony conviction, no matter its implications, does not permit us to assume that because a solicitor or a principal was once convicted of committing any felony, he will similarly violate the law again, or that if he does so, criminal sanctions will not afford an adequate remedy. Fraudulent solicitation is already a crime. (Pen. Code, § 532d.)
“The [City’s] interest can be advanced by less restrictive means which do not entail diminution of First Amendment rights. These include enforcement of existing laws against fraud (see Pen. Code, § 484), trespass (Pen. Code, § 602), breach of the peace, and any other substantive offenses which might be committed. [Citations omitted.] The [City] may adopt appropriate registration and identification procedures to protect its residents against wrongdoing by spurious solicitors [citation omitted], ... The [City] may also ‘punish those who call at home in defiance of the previously expressed will of the occupant.’ [Citations omitted.]
“In light of the less restrictive alternative available to the [City] for the furtherance of its legitimate governmental interests, the challenged ordinance is unconstitutional because it is not drawn as narrowly as possible to avoid infringing First Amendment rights. [Citations omitted.]” (Alternatives for California Women, Inc. v. County of Contra Costa, supra, 145 Cal.App.3d 436, 449-450.)
10. Defendants’ final contention is that penalty assessments have been imposed in excess of levels permitted by law at the time defendants committed the offenses in question. The record does not disclose the basis for this *Supp. 15 contention. If the contention is valid, the assessments must be recalculated and imposed as of the time the offenses were committed.
We affirm the convictions of defendants on count I, violation of Penal Code section 532d. We reverse the convictions for violation of the Long Beach Ordinance 5.22.120 because of its unconstitutionality. The case is remanded to the trial court for further proceedings consistent with this opinion.
Cooperman, P. J., and Soven, J., concurred.

 See footnote, ante, page Supp. 6.