**BERKELEY COMMUNITY HEALTH PROJECT, et al., Plaintiffs,**

v.

**CITY OF BERKELEY, et al., Defendants.**

**No. C 95–0665 CW.**

United States District Court, N.D. California.

May 5, 1995.

Osha Neumann, Berkeley, CA, Harry B. Bremond, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Alan L. Schlosser, American Civil Liberties Union Foundation of Northern CA Inc., San Francisco, CA, James B. Chanin, James B. Chanin Law Offices, Berkeley, CA, for plaintiffs.

Manuela Albuquerque, Berkeley, CA, Michael A. Ladra, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Osha Newman Berkeley, CA, for defendants.

*ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND PRELIMINARY INJUNCTION*

WILKEN, District Judge.

Plaintiffs' Motion for Preliminary Injunction was heard by this Court on April 21, 1995. Having considered the oral argument

**1086**

and papers filed by the parties, and good cause appearing, the Court hereby GRANTS the Petitioner's motion in part and issues a preliminary injunction pending final disposition of this action, enjoining the enforcement of the Solicitation Ordinance in its entirety, and enjoining the Sitting Ordinance with respect to the conduct of sitting.

*Statement of Facts and Issues*

This action challenges two recently enacted ordinances of the City of Berkeley, Berkeley Municipal Code § 13.37 (the "Solicitation Ordinance") and Berkeley Municipal § 13.36.015 (the "Sitting Ordinance"). The instant motion seeks to enjoin Defendants from taking action to implement or enforce the two challenged ordinances pending final determination of this action.

The Solicitation Ordinance regulates the act of solicitation, defined as asking for the immediate payment of money or goods by words, gestures, signs or "other means," whether or not in exchange for goods, services or other consideration,[1] as follows:

It is unlawful for any person to solicit another in any public place at the times, locations and in the manner specified below: (1) In any manner which coerces, threatens, hounds, or intimidates the person solicited; (2) From any person entering or exiting from an automotive vehicle; (3) Within ten (10) feet of any automatic teller machine in the City of Berkeley; (4) Within six feet of the face of any building fronting the right-of-way in any commercial zone in the City of Berkeley; (5) After dark as defined in this ordinance.

"After dark" is defined as "any time from one-half hour after sunset to one-half hour before sunrise."

The Sitting Ordinance generally prohibits sitting or lying on a public sidewalk near a building as follows:

No person shall sit or lie down upon a public sidewalk, or upon a blanket, chair, stool, or any other object placed upon a public sidewalk, within six feet of the face

of any building fronting the right-of-way in any commercial zone in the City of Berkeley between the hours of 7:00 a.m. and 10:00 p.m.

This ordinance contains exceptions for persons seated in wheelchairs or baby strollers, a person in the midst of a medical emergency, and the proprietor, patrons and employees of a business licensed to conduct business in the public right-of-way.

Each ordinance provides that no person shall be cited for being within a prohibited distance without first having been warned by a law-enforcement officer. Each ordinance also contains a severability clause.

Defendants contend, and make a factual showing, that the two challenged ordinances were enacted in response to complaints regarding intimidation by panhandlers and concerns about a host of civic problems which citizens and officials believed were linked to panhandling, ranging from unsanitary conditions in the streets to violent crimes. The City Council approved the recommendations of a task force convened by the mayor to consider issues regarding street behavior. One of the express goals of the task force was "to reduce the amount of solicitation on our streets." Defendants proffer declarations of Berkeley citizens and officials which illustrate the range of concerns.

These declarants relate incidents relevant to the challenged solicitation ordinance, including continued solicitation after an initial refusal, aggressive soliciting by persons pacing in front of restaurants, presence of a number of people in one block soliciting money "such that a gauntlet effect is created," rejection of a proffered voucher with obscenities, and remarks designed to make people feel guilty if they decline to give alms.

The declarations also describe conduct related to the challenged sitting ordinance, including blocking of access to store windows, presence of such a large number of people sitting on the curb in front of the entrance to

---

1. The ordinance as originally enacted did not specify whether solicitation included asking for payment of money in exchange for goods or services. When the City of Berkeley learned of Plaintiffs' position that commercial solicitation was excluded from the ordinance and that this provided a separate ground for challenge to the ordinance, the City Council passed an amendment specifying this inclusion.

a bank that it is difficult to enter, and being forced to step over or avoid "reclining or sleeping bodies." A Berkeley official states that he has received complaints about and has personally observed:

> ... persons lying and sitting on sidewalks in such a manner as to essentially stake out parts of the public right of way virtually as their private preserve. Often, these people imbibed liquor and other illegal substances, were intoxicated, and littered the street with food and beverage containers and human urine. Their presence also lead to street drug dealing.

The declarants also describe incidents not specifically related to either solicitation or sitting, such as derogatory comments and obscenities being yelled and unspecified bizarre behavior. Finally, the declarants tell of incidents of solicitation and sitting which would not be affected by this ordinance, such as solicitors entering private restaurants, being forced to walk close to buildings because of the presence of people sitting or lying on the sidewalk, and people "camping" within private doorways.

The Berkeley Police prepared to enforce the ordinances by creating training and information bulletins regarding each ordinance. Each bulletin points out that:

> The ordinance applies to the portion of the sidewalk closest to a building. It does not apply to persons ... on the sidewalk nearer the curb. [Note that B.M.C. section 13.36.010 prohibits any person from intentionally standing, sitting or lying on any portion of a sidewalk substantially blocking free passage.]

Shortly after passage of the ordinances challenged herein, the City amended its Municipal Code and zoning ordinance to authorize use permits for sidewalk cafe seating in the public right-of-way. The City Manager's recommendation for this action specifies that "for many years, it has been City policy to provide a variety of outdoor spaces in the Downtown for people to gather and enjoy themselves. The Downtown Plan, adopted by the Council in 1990, specifically calls for more outdoor sitting areas for pedestrians ..."

Plaintiffs in this action are as follows. Chris Stanley and Toni Catano are indigent individuals who solicit money to meet their immediate survival needs. CopWatch and the Green Party are "grass roots" political organizations which solicit money to support their political efforts while disseminating information and political views. Berkeley Community Health Project is a non-profit organization which solicits money to support the Berkeley Free Clinic while distributing information. Plaintiffs make the following showing regarding the harm they would suffer as a result of the enforcement of the challenged ordinances.

Chris Stanley solicits from 9:00 a.m. until 9:30 p.m., using a sign to ask for money. Toni Catano solicits money orally. Both sit rather than standing while soliciting because of physical disabilities. In addition, both sit against or close to buildings in order to take advantage of the shelter the building provides from the elements, to avoid blocking traffic, and because it is a visible location. Finally, Ms. Catano sits because sitting "allows more effective communications with the passers-by." Plaintiffs also proffer the declaration of a street musician, who sits or stands next to a building while performing because the building wall improves the acoustics so as to make his music audible to passersby, to avoid blocking foot traffic, and to reduce his vulnerability to thieves.

CopWatch volunteers distribute information regarding police practices and solicit donations of money and goods to fund these efforts.[2] Because CopWatch volunteers typically work or attend school during the day, most of these activities take place in the evening and on weekends. They frequently solicit within six feet of a building so as not to block traffic.

Green Party volunteers attempt to register new party members and solicit donations to

---

2. Defendants proffer a declaration of a Berkeley patrol officer familiar with CopWatch expressing the belief that CopWatch does not in fact solicit money. However, the declaration specifically admits that CopWatch offers T-shirts for sale, which falls within the definition of solicitation under the amended Solicitation Ordinance.

fund further voter registration efforts. To do this, they set up ironing boards displaying their party materials and a donation cup within six feet of commercial buildings, because this location is both the safest and the most visible location. They solicit in the evenings, and attempt to register people as they stand in line for a movie.

Berkeley Community Health Services uses disabled and elderly solicitors, most of whom are unable to stand for long periods of time. They solicit within six feet of buildings for their own safety and to avoid blocking foot traffic. They claim that the most effective time to solicit donations is during the early evening, from 5:00 to 7:00 p.m., especially during the winter holiday season, when people tend to donate more. Two of their primary solicitation sites are within 10 feet of Automated Teller Machines.

Defendants dispute the organizational Plaintiffs' claims that they conduct evening solicitation. Defendants proffer declarations of police officers that in surveys of the commercial areas on Solano Avenue, Shattuck Avenue and Telegraph Avenue conducted on five evenings in March, 1995, only one solicitor, for the Berkeley Free Clinic, was seen.

There is also a dispute regarding the availability of space for soliciting and sitting if the challenged ordinances are enforced. Defendants proffer the declaration of a public works engineer with scaled drawings depicting sidewalks in four areas of Berkeley. These drawings show a sidewalk on Shattuck Avenue which is 18 feet wide, two sidewalk areas on Shattuck Avenue surrounding the BART station with widths ranging from 20 to 65 feet, and a sidewalk on Telegraph Avenue ranging from 14 to 24 feet wide.

Plaintiffs respond with photographs and the photographer's declaration. The declaration avers that the width of the Telegraph Avenue sidewalk depicted in Defendants' scaled drawing actually ranges from 10.5 feet to 16 feet. The photographs depict five locations on Telegraph Avenue and demonstrate that a six foot restriction would confine solicitation to a two to three and a half foot area directly in front of the street vendor tables licensed by the City to operate in particular locations. Plaintiffs' final photograph depicts a portion of sidewalk on College Avenue which is nine feet, four inches wide, so that the six foot restriction would confine solicitation to less than a three and half foot area directly next to the curb and the passenger doors of parked cars. In addition, Plaintiffs proffer the declaration of a local owner of a cafe, who states that solicitors sit within six feet of her cafe without interfering with her business, but that if they were positioned six feet from the cafe they would be in the way of people entering and exiting their cars parked in the street.

*Legal Standard*

■ "The function of a preliminary injunction is to maintain the *status quo ante litem* pending determination of the action on the merits." *Washington Capitols Basketball Club v. Barry,* 419 F.2d 472, 476 (9th Cir. 1969). The moving party is entitled to preliminary injunction if it establishes either:

(1) a combination of probable success on the merits and the possibility of irreparable harm, or

(2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor.

*Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). The test is a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Id.* at 1217 (quoting *San Diego Committee Against Registration and the Draft v. Governing Board of Grossmont Union High School Dist.,* 790 F.2d 1471, 1473 n. 3 (9th Cir.1986)).

*Discussion*

*A. Likelihood of Success on the Merits*

■ Plaintiffs challenge the two Berkeley ordinances under both state and federal constitutional law. It is well established that courts should avoid the resolution of federal constitutional issues if a case can be resolved on state law grounds. *Hewitt v. Joyner,* 940 F.2d 1561, 1565 (9th Cir.1991), *cert. denied by Joyner v. Hewitt,* 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992). Therefore, this Court will first address the state law issues.

### 1. Preemption

■ Plaintiffs contend that that portion of the Solicitation Ordinance prohibiting solicitation within 10 feet of an ATM is preempted by California Financial Code Sections 13000 and 13070. The language of § 13070 appears on its face to support this argument, since it broadly states:

This division supersedes and preempts all rules, regulations, codes, statutes or ordinances of all cities, . . . municipalities, and local agencies regarding customer safety at automated teller machines located in California.

However, the legislative intent provision of the division, which closely mirrors the language of § 13070, demonstrates that the intended meaning of the provision is more narrow than it appears:

[T]he Legislature intends to establish as the standard of care applicable to operators of automated teller machines, in connection with user safety, the substantial compliance with the objective standards of [this division]. . . . The Legislature further recognizes the need for uniformity as to the establishment of automated teller machine safety standards and intends with this division to supersede and preempt any rule, regulation, code, statute or ordinance of any city, . . . municipality, or local agency regarding customer safety at automated teller machines in California.

Cal.Fin.Code § 13000. The two sections, and the other provisions of the division, which consist solely of standards applicable to ATM operators, must be read together and harmonized with each other. It then becomes apparent that the intended scope of preemption extends only to rules and ordinances which regulate ATM operators with respect to user safety. Ordinances which regulate the public, however, such as the ordinances challenged here, are outside the intended scope of preemption. Thus there appears to be no likelihood that Plaintiffs will prevail on the merits of this claim.

### 2. California Constitution

■ Like the First Amendment of the United States Constitution, the Liberty of Speech Clause of the California Constitution restricts the government's right to prohibit or impose unreasonable burdens on speech. Solicitation of donations is a form of speech, protected under both the federal and state constitutions. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632, 100 S.Ct. 826, 833–34, 63 L.Ed.2d 73 (1980) (First Amendment); *People v. Fogelson*, 21 Cal.3d 158, 165, 145 Cal.Rptr. 542, 577 P.2d 677 (1978) (California Liberty of Speech Clause).

Plaintiffs argue that the Solicitation Ordinance, in its entirety, violates the Liberty of Speech Clause of the California Constitution by defining the scope of the conduct to be regulated by the content of speech, that is, the request for money. The California Liberty of Speech Clause is a "protective provision more definitive and inclusive than the First Amendment" of the United States Constitution. *Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899, 908, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), *aff'd*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980).

The California Supreme Court has never decided the issue of whether regulation directed solely at solicitation of money violates the California Liberty of Speech Clause. Defendants' contention that this point was decided in *People v. Fogelson* is incorrect. In *Fogelson*, the California Supreme Court considered a Los Angeles ordinance, which prohibited solicitation on property under the control of the city without a city official's written permission, under the First Amendment and California Constitution. The court explained the precise issue presented to it as follows:

Appellant's principal contention is that the Los Angeles solicitation ordinance is facially invalid because it fails to provide any standards for granting or refusing permission to engage in solicitation, many forms of which are constitutionally protected conduct.

21 Cal.3d at 162, 145 Cal.Rptr. 542, 577 P.2d 677. The court concluded that the ordinance was facially invalid on those grounds. *Id.* at 167, 145 Cal.Rptr. 542, 577 P.2d 677. There is no indication in its opinion that the court considered, or the parties raised, the alternative issue of whether an ordinance which

regulates only speech that includes solicitation unconstitutionally discriminates against certain speech based on its content.

It is true that the court appeared to assume that the ordinance was neutral as to the content of speech it regulated, since the language of its opinion used "speech" and "solicitation" interchangeably in discussing the government's ability reasonably to regulate the time, place and manner of the speech. *Id.* at 165, 145 Cal.Rptr. 542, 577 P.2d 677. However, that the court did not intend this language to decide that an ordinance directed solely at non-commercial solicitation was content-neutral is illustrated by the authorities it cited in support of its discussion, none of which are relevant to that issue. The authorities cited by the court did not involve ordinances or statutes facially directed solely at non-commercial solicitation. *See Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (statute prohibiting parades or processions on public streets without a license); *In re Hoffman,* 67 Cal.2d 845, 851–52, 64 Cal.Rptr. 97, 434 P.2d 353 (1967) (ordinance prohibiting a person from being in a public transportation terminal longer than necessary to conduct business with a carrier); *Gospel Army v. City of Los Angeles,* 27 Cal.2d 232, 163 P.2d 704 (1945) (ordinance regulating junk and second hand dealers), *appeal dismissed,* 331 U.S. 543, 67 S.Ct. 1428, 91 L.Ed. 1662 (1947).

The sole California Court of Appeals which has examined this issue held that singling out for regulation speech that involves soliciting donations constitutes impermissible discrimination based on the content of speech. *Alternatives for California Women, Inc. v. County of Contra Costa,* 145 Cal.App.3d 436, 193 Cal.Rptr. 384 (1983). That court, in striking down an ordinance which regulated door to door solicitation, stated as follows:

> The challenged ordinance permits unlimited access by persons who wish to approach residents about random subjects, but it does not do this for persons or organizations soliciting funds (such as ACW). The ordinance discriminates on the basis of the content of a speaker's message to the extent that a person who literally *solicits* from residents is regulated but one who seeks only a receptive listener is not. This disparity has the effect of making the ordinance constitutionally deficient.

145 Cal.App.3d at 450, 193 Cal.Rptr. 384 (emphasis in original). This holding was independent of the court's finding in a previous section of the opinion that the ordinance was not narrowly drawn to promote compelling state interests; thus, such content-based discrimination makes an ordinance facially unconstitutional regardless of the state interest it attempts to further.

The Ninth Circuit has recognized *Alternatives for California Women* as the law of California in this regard, invalidating an ordinance that regulated solicitation but not other speech. *Carreras v. City of Anaheim,* 768 F.2d 1039, 1048 (9th Cir.1985). The ordinance at issue in *Carreras* required persons soliciting within city limits to obtain a permit. The *Carreras* court held as follows:

> Just as the ordinance considered in *Alternatives for California Women* did, the Anaheim ordinance regulated only those speakers whose message includes an appeal for funds. We thus conclude that the ordinance on its face violated the California Constitution by discriminating between regulated and unregulated speech on the basis of its content.

*Id.* The *Carreras* court noted that although the *Alternatives for California Women* court was not clear as to whether its holding was based solely on the California Constitution or also on the First Amendment to the United States Constitution, the holding "is most plausibly interpreted as independently grounded on the California Liberty of Speech Clause." *Id.* at n. 21.[3]

Defendants argue that the case of *Savage v. Trammell Crow Co., Inc.,* 223 Cal.App.3d 1562, 273 Cal.Rptr. 302 (1990), decided after *Carreras,* alters the California law on this

---

**3.** Defendants' attempt to avoid *Carreras* by characterizing the Ninth Circuit's discussion of *Alternatives* as dictum merits scant consideration. *Carreras* directly relied on *Alternatives* in finding that the ordinance worked impermissible content discrimination under the California Constitution by singling out for regulation speech involving solicitation. *Id.* at 1048.

issue. However, the language relied upon by Defendants is dictum.

*Savage* involved a private shopping center's policies not to permit leafleting of cars in its parking lot and to permit leafleting within the shopping center only if the content of the leaflet was "political." The court held that the parking lot ban did not violate the plaintiff's free speech rights under the California Constitution, since the policy was neutral with respect to the message communicated on the leaflet and was a reasonable time, place and manner restriction. *Id.* at 1571, 273 Cal.Rptr. 302. It held, however, that the shopping center did not have the power to regulate the contents of the leaflets distributed within the shopping center. *Id.* at 1580–81, 273 Cal.Rptr. 302. In a footnote, the court noted that while the content of a message is not subject to regulation, the means employed to convey a message are subject to regulation, and opined that a regulator could "validly draw a distinction between distributing leaflets and soliciting donations." *Id.* at 1581 n. 6, 273 Cal.Rptr. 302. However, that footnote is dictum, since the solicitation of donations was not at issue in that case.

■ Therefore, this Court will follow *Carreras* and find that *Alternatives for California Women* states the test under the California Constitution Liberty of Speech clause for impermissible content based discrimination. Applying that test, the Berkeley Solicitation Ordinance is facially invalid under the California Constitution. It defines the scope of regulated conduct based upon the content of speech, that is, whether or not the speaker conveys the message of seeking contributions. Accordingly, Plaintiffs will almost certainly prevail on the merits of their challenge to this ordinance.

■ With respect to the Sitting Ordinance, Plaintiffs do not claim that the protection of the California Liberty of Speech clause exceeds that of the First Amendment. Where the related federal and state constitutional provisions are co-extensive, a federal court may decide the federal constitutional claims without first separately addressing the state claims, because the federal analysis will decide the state claims. *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1392 (9th Cir.),

*cert. denied,* —— U.S. ——, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994).

### 3. First Amendment

Plaintiffs contend that the Sitting Ordinance places an unreasonable burden on the exercise of First Amendment rights and is, therefore, unconstitutional. Since the ordinance does not on its face regulate speech, Plaintiffs have the burden to establish that the First Amendment applies. *Clark v. Community for Non–Violence,* 468 U.S. 288, 293 n. 5, 104 S.Ct. 3065, 3069 n. 5, 82 L.Ed.2d 221 (1984).

Plaintiffs attempt to meet that burden in two ways: first, by asserting that sitting can be expressive conduct; and second, by demonstrating that, at least as to Plaintiffs Stanley, Catano and Berkeley Community Health Project and one declarant, sitting is so necessary to and intertwined with their exercise of their free speech rights as to establish that the Sitting Ordinance significantly burdens speech. Plaintiffs argue that the Sitting Ordinance is overbroad, in that it impermissibly regulates conduct within the scope of the First Amendment's protection as well as unprotected conduct.

■ Defendants argue that these arguments cannot prevail on a facial challenge, but must await enforcement of the ordinance and an "as applied" challenge to that enforcement. It is true that, as a general rule, a facial challenge to the constitutional validity of an enactment considers only the text of the measure itself, not its application to the particular circumstances of an individual, so that the challenger must demonstrate that the enactment's provisions pose a total and fatal conflict with applicable constitutional prohibitions. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). However, to avoid chilling the exercise of free speech rights, an exception to this general rule exists for First Amendment overbreadth challenges. *Yniguez v. Arizonans for Official English,* 42 F.3d 1217, 1228 (9th Cir.1994). The Ninth Circuit explained the overbreadth doctrine in *Yniguez* as follows:

Under the overbreadth doctrine, . . . a party may challenge a law as facially overbroad that would be unconstitutional as applied to him so long as it would also chill the speech of absent third parties. The facial invalidation that overbreadth permits is necessary to protect the First Amendment rights of speakers who may fear to challenge the provision on their own. . . .

A provision will not be facially invalidated on overbreadth grounds unless its overbreadth is both real and substantial judged in relation to its plainly legitimate sweep, and the provision is not susceptible to a narrowing construction that would cure its constitutional infirmity. Accordingly, a law will not be facially invalidated simply because it has some conceivably unconstitutional applications. Rather to support a finding of overbreadth, there must be a substantial number of instances in which the provision will violate the First Amendment.

*Id.* (citations omitted). Thus, in a facial overbreadth challenge, the entire range of predictable applications of the enactment are appropriately considered.

■ The Court considers first Plaintiffs' contention that the act of sitting will sometimes constitute expressive conduct subject to First Amendment protections. The test to determine whether conduct is sufficiently communicative to enjoy First Amendment protections consists of two elements: the actor must intend to communicate a particularized message; and the surrounding circumstances must create a great likelihood that the message will be understood by those who view it. *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730–31, 41 L.Ed.2d 842 (1974). It is clear that in some circumstances, the conduct of sitting is both intended to be and is understood as being expressive. *See Brown v. Louisiana*, 383 U.S. 131, 140–42, 86 S.Ct. 719, 723–24, 15 L.Ed.2d 637 (1966) (Black Americans sitting and "staring vacantly" in an "unnerving manner" in a public library as a "silent and reproachful presence" to protest segregation is expressive conduct under First Amendment).

The possible messages conveyed by a solicitor's conduct of sitting are best analyzed in the context of the messages conveyed in solicitation itself. Those messages are explained thoroughly in *Blair v. Shanahan*, 775 F.Supp. 1315 (N.D.Cal.1991), *appeal dismissed and remanded*, 38 F.3d 1514 (9th Cir.1994), *cert. denied by California v. Celestus Blair, Jr.*, —— U.S. ——, 115 S.Ct. 1698, 131 L.Ed.2d 561 (1995) (California Penal Code provision prohibiting begging in public places unconstitutional under the First and Fourteenth Amendments to the United States Constitution). The *Blair* court found that begging for one's own benefit implicates informational and advocacy speech interests as follows:

A request for alms clearly conveys information regarding the speaker's plight. Begging gives the speaker an opportunity to spread his views and ideas on, among other things, the way our society treats its poor and disenfranchised. And in some cases, a beggar's request can change the way the listener sees his or her relationship with and obligations to the poor. "Begging does considerably more than 'propose a commercial transaction.' Like other charitable requests, begging appeals to the listener's sense of compassion or social justice, rather than to his economic self-interest." Hershkoff & Cohen, *Begging to Differ: The First Amendment and the Right to Beg*, 104 Harv.L.Rev. 896, 908 (1991).

*Blair*, 775 F.Supp. at 1322–23.

■ The factual record before the Court in this motion suggests that solicitors' acts of sitting on the sidewalk are also intended to and perceived to communicate particularized messages. For example, Plaintiff Catano's declaration that her solicitation is more effective when she is seated suggests that sitting conveys a persuasive message. And the degree of discomfort at the very sight of a sitting solicitor demonstrated by the City's declarants is evidence that the message conveyed by the conduct is a powerful and disturbing one.

One message which may be communicated by the act of sitting on the sidewalk is the message that the solicitor is in serious need. A person seated on the sidewalk with an empty cup conveys the message of seeking

alms without the need of a sign or words. The act of sitting on the sidewalk expresses that the person has no place else to go, no place to call his or her own. Sitting conveys that the solicitor may be too weak, ill or defeated by circumstances to stand, a message which may invoke sympathy or guilt.

A second message apparently communicated is of particular significance in light of the City's showing that some citizens are frightened by aggressive panhandling involving blocking passage and following the prospective donor. That is the message that the solicitor is not aggressive, but passive, and therefore that passersby need not be intimidated, whether or not they choose to give alms.

In addition to showing that sitting is at least sometimes expressive conduct, Plaintiffs demonstrate that Plaintiffs Stanley, Catano and Berkeley Community Health Project's solicitors' ability to engage in the protected speech of solicitation depends on being permitted to sit due to their physical disabilities, which preclude standing for long periods. These Plaintiffs and the street musician declarant further demonstrate that sitting against a building significantly aids their ability to engage in solicitation, by protecting their health and safety while soliciting, by making them visible and audible to passersby, and by permitting them to avoid blocking traffic, an act prohibited by a separate ordinance.

■ In light of these showings, the Court finds that Plaintiffs have demonstrated a substantial likelihood that they will succeed in establishing that there are numerous instances in which the Sitting Ordinance will implicate First Amendment rights. This dis-tinguishes the instant case from *Roulette v. City of Seattle*, 850 F.Supp. 1442, 1448–49 (W.D.Wash.1994), in which a similar regulation was upheld in the absence of such a showing that sitting was intended as expressive conduct or was inextricably linked with speech for more than one individual.[4]

■ The Court must next examine whether it is likely that Plaintiffs will succeed in showing that the First Amendment rights implicated are violated. There is no doubt that the public sidewalks regulated by this ordinance are public fora in which First Amendment rights are at their highest. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983). In such public fora, content-neutral[5] regulation of time, place and manner of expression is permissible if it is narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *Id.*

Defendants contend that the Sitting Ordinance is narrowly tailored to serve a significant governmental interest "in keeping the sidewalks clean and free of obstructions in order to prevent them from being used as a repository of litter and human waste and to deter drug dealing and public intoxication." However, they provide no evidence or explanation of how the location of the sitters relates in any way to this governmental interest. The ordinance is not narrowly tailored to serve this interest.[6]

Further, it appears on the record presently before the Court that the six foot restriction does not leave open ample alternative channels of communication for those who must sit, since they would be required to sit in locations which endanger their safety,

---

4. The Court notes that *Roulette* is presently on appeal. To the extent that the decision of the Ninth Circuit in that case calls into question any part of this Court's analysis, this Court will reconsider this decision.

5. The Sitting Ordinance is obviously content-neutral on its face. It is not explicitly directed to any particular message. Indeed it is neutral as to whether a message even exists, since it applies equally whether the act of sitting is intended to be expressive, merely facilitates speech, or is unrelated to speech, as when a passerby sits to rest.

6. At the hearing on this motion, Defendants raised for the first time a second governmental interest in preventing store entrances and the line of sight of passersby through store windows from being blocked. The ordinance is not narrowly tailored to serve this interest. The conduct of blocking entrances is separately regulated. Further, the prohibited act of sitting blocks less of the view into store windows than the permitted act of standing.

whether immediately next to car doors, immediately in front of street vendors' tables, or in the middle of the sidewalk in the stream of foot traffic. Indeed, these locations may not even be legally available, since another Berkeley ordinance, B.M.C. § 13.36.010, prohibits any person from substantially blocking free passage on any portion of a sidewalk while sitting.

Since the conduct prohibited by the Sitting Ordinance is not pure speech, but only expressive conduct, Defendants argue that Plaintiffs must also demonstrate likelihood of showing that the ordinance does not meet the four-part test for determining when a governmental interest sufficiently justifies the regulation of expressive conduct, established in *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). It may be that the expressive conduct of sitting will be shown to be so inextricably intertwined with the speech of solicitation in a substantial number of cases that the entire course of conduct must be classified as fully protected speech. *See Gaudiya Vaishnava Society v. City and County of San Francisco,* 952 F.2d 1059, 1064 (9th Cir. 1990), *cert. denied by City and County of San Francisco v. Gaudiya Vaishnava Society,* 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992) (where pure speech and commercial speech inextricably intertwined, the entire speech must be classified as fully protected noncommercial speech).

However, even assuming that *O'Brien* will apply, Plaintiffs have demonstrated the likelihood that the ordinance would not pass its four-part balancing test. The first part of the test is that the ordinance must be within the constitutional power of the City. Plaintiffs call this into question, arguing that the Sitting Ordinance unconstitutionally interferes with individual liberty without adequate justification. The Court assumes, though, for purposes of this discussion, that the police power of the City extends to any ordinance seeking to keep sidewalks clean and free of obstructions.

Part two of the *O'Brien* test requires that the ordinance further an important or substantial governmental interest. As discussed above, although a substantial government interest is present, there is no evidence that the ordinance furthers the interest.

The third *O'Brien* prong is that the governmental interest must be unrelated to the suppression of free expression. Clearly, the stated interest in clean, safe sidewalks is unrelated to the suppression of speech. On the other hand, there is another interest which is very much related to the suppression of speech. That is the goal stated in the mayor's task force recommendations:[7] "to reduce the amount of solicitation on our streets." The existence of this government interest is further demonstrated in the linkage between the Solicitation Ordinance and the Sitting Ordinance throughout the history of their enactment.

■ Ordinarily, the subjective motive of the legislative body is irrelevant to the validity of the statute or ordinance. *O'Brien,* 391 U.S. at 383, 88 S.Ct. at 1682–83. *But see, Board of Education, Island Trees Union Free School District No. 26 v. Pico,* 457 U.S. 853, 870–72, 102 S.Ct. 2799, 2809–11, 73 L.Ed.2d 435 (1982) (whether removal of books from school libraries by board of education violated students' First Amendment rights depends upon the motivation behind the school board's action). Where the enactment on its face serves one important governmental interest not related to suppression of speech, it meets the third prong of the *O'Brien* test. However, there is no such interest served here. Instead, there is an indication in the record that the Sitting Ordinance was intentionally directed at solicitors. Thus, the third *O'Brien* factor is not met.

The fourth and final test under *O'Brien* is whether the incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of the neutral governmental interest. The ordinance fails this test as well. The City's proclaimed interests could be met directly and precisely by ordinances prohibiting the conduct it claims to seek to regulate: blocking sidewalks, littering, public urination and defecation, public intoxication, and drug dealing. Sitting is not a proxy for these harmful behaviors, and no

---

**7.** These were adopted by the City and implement-   ed in the challenged ordinances.

linkage has been persuasively shown. The act of sitting within six feet of a building is not inherently harmful.

Therefore, the Court finds that the Plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of their challenge to the Sitting Ordinance as it relates to the conduct of sitting. They have, at the least, raised serious questions. However, as to the conduct of lying down on the sidewalk, no showing of likelihood of success on the merits has been made.

*B. Irreparable Harm and Balance of Hardships*

 "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). In addition, Plaintiffs have made a substantial showing that enforcement of the challenged ordinances would prevent them from communicating their message to a wider audience by soliciting in the evening, and would endanger their health and safety by requiring them to solicit in the flow of traffic, exposed to the elements and the caprice of passersby, rather than in the relative safety and shelter afforded by staying close to the walls of commercial buildings.

Balanced against this showing is a showing that some Berkeley citizens feel annoyed or guilty when faced with an indigent beggar, and that there is criminal conduct on the streets. Feelings of annoyance or guilt, however, cannot outweigh the exercise of First Amendment rights, and criminal conduct can be regulated through existing statutes and ordinances preventing such conduct whether or not accompanied by solicitation. Having carefully reviewed the evidentiary record, the Court therefore finds that the balance of hardships tips sharply in favor of the Plaintiffs.

*Conclusion and Order*

Therefore, the Court finds that Plaintiffs have demonstrated that they are substantially likely to prevail on the merits with respect to the Solicitation Ordinance in its entirety and with respect to the Sitting Ordinance to the extent that it regulates sitting. The Court further finds that the balance of hardships tips sharply in Plaintiffs' favor. Accordingly, Plaintiffs' Motion for Preliminary Injunction is GRANTED in part, and a Preliminary Injunction is hereby entered pending final determination of this action by this Court as follows.

Defendants are hereby preliminarily enjoined from taking any action to enforce the provisions of Berkeley Municipal Code §§ 13.37.010, 13.37.020 and 13.37.030, until further order of this Court. Defendants are further preliminarily enjoined from taking any action to enforce Berkeley Municipal Code §§ 13.36.015 and 13.36.100 to the extent that they regulate the conduct of sitting. However, the injunction does not extend to enforcement of these sections as they relate to the conduct of lying down.

IT IS SO ORDERED.