157 F.3d 1162
 98 Cal. Daily Op. Serv. 7191, 98 Cal. Daily
Op. Serv. 7195,
98 Daily Journal D.A.R. 9933
LOS ANGELES ALLIANCE FOR SURVIVAL; Los Angeles Coalition to
End Hunger and Homelessness; Jerry Rubin,
Plaintiffs-Appellees,
v.
CITY OF LOS ANGELES; Richard J. Riordan, Mayor of the City
of Los Angeles, in his official capacity; Bernard Parks,
Chief of Police for the City of Los Angeles, in his official
capacity, Defendants-Appellants.
 No. 97-56742.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 3, 1998.
Decided Sept. 15, 1998.
 
 Before: FLETCHER*, THOMPSON and McKEOWN, Circuit Judges.
 
 ORDER
 
 1
 We certify the following question to the California Supreme Court all as set forth in the attached request:
 
 
 2
 Is an ordinance[1] that seeks to regulate the time, place and manner of solicitation of money or other thing of value or the sale of goods or services content based under the Liberty of Speech Clause of the California Constitution? Cal. Const. art. I, § 2.
 
 
 3
 We stay all further proceedings in the district court and this court pending receipt of the answer to the certified question. If the California Supreme Court declines certification, we will resolve the issue according to our perception of California law.
 
 
 4
 The appellants stipulated at oral argument, that they do not oppose the preliminary injunction remaining in effect pending receipt of the answer to the certified question and further order of this court. We so order.
 
 
 5
 The clerk of the court is hereby directed to transmit forthwith, under the official seal of the Ninth Circuit, a copy of this order, the attached Request for Certification, and copies of all briefs and excerpts of record submitted to this court to the California Supreme Court. This case is withdrawn from submission until further order of the court.
 
 
 6
 REQUEST FOR CERTIFICATION DIRECTED TO THE SUPREME COURT OF CALIFORNIA.
 
 
 7
 Pursuant to Rule 29.5 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, hereby certifies to the Supreme Court of California a question that turns on whether the scope of protection of speech granted by the California Constitution's Liberty of Speech Clause, Cal. Const. art I, § 2, is broader than the protections afforded by the First Amendment of the United States Constitution as applied to regulation of solicitation. The answer may be determinative of the outcome of this appeal. We find no clear controlling precedent in the decisions of the California Supreme Court. We respectfully request that the Supreme Court of California answer the certified question presented below. Our phrasing of the question should not restrict the Court's consideration of the issue involved.
 
 I. Caption of the Case
 
 8
 The City of Los Angeles is deemed the petitioner in this request because it sought the certification. The caption of the case and the names and addresses of counsel are as follows:
 
 
 9
 LOS ANGELES ALLIANCE FOR SURVIVAL; LOS ANGELES COALITION TO
 
 
 10
 END HUNGER AND HOMELESSNESS; JERRY RUBIN,
 
 
 11
 Plaintiffs-Respondents,
 
 
 12
 v.
 
 
 13
 CITY OF LOS ANGELES; RICHARD J. RIORDAn, Mayor of the City
 
 
 14
 of Los Angeles, in his official capacity; BERNARD PARKS,
 
 
 15
 Chief of Police for the City of Los Angeles, in his official
 
 
 16
 capacity, Defendants-Petitioners.
 
 COUNSEL
 
 17
 Carol A. Sobel, Santa Monica, CA; Mark D. Rosenbaum and Peter Eliasberg, ACLU Foundation of Southern California, Los Angeles, CA, for Plaintiffs-Appellants-Respondents.
 
 
 18
 Byron R. Boeckman, Frederick N. Merkin and James K. Hahn, Office of City Attorney, Los Angeles, CA, for Defendants-Appellants-Petitioners.
 
 
 19
 Marc A. Becker, Munger, Tolles & Olson, LLP, Los Angeles, CA, for Amicus-Curiae.
 
 II. Question of Law to be Answered
 
 20
 Is an ordinance1 that seeks to regulate the time, place and manner of solicitation of money or other thing of value or the sale of goods or services content based under the Liberty of Speech Clause of the California Constitution? Cal. Const. art. I, § 2.
 
 III. Statement of Facts
 
 21
 On July 2, 1997, the Los Angeles City Council enacted Ordinance No. 171664 entitled "Prohibition Against Certain Forms of Aggressive Solicitation," codified as Los Angeles Municipal Code § 41.59. The ordinance was signed by Mayor Richard Riordan and went into effect August 15, 1997. The stated goal of the ordinance is "to protect citizens from the fear and intimidation accompanying certain kinds of solicitation that have been an unwelcome and overwhelming presence in the city." The ordinance prohibits two kinds of solicitations--"aggressive solicitations" in all locations, § 41.59(b), and all solicitations in specific locations, § 41.59(c). The ordinance defines solicitation broadly as follows:
 
 
 22
 "Solicit, ask or beg" shall include using the spoken, written, or printed word, or bodily gestures, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services.
 
 
 23
 Section 41.59(a)(1).
 
 
 24
 Appellees[2] are groups and individuals that solicit immediate donations of money from members of the public on public fora throughout the City of Los Angeles. On September 11, 1997, appellees brought an action for injunctive and declaratory relief to enjoin enforcement of the ordinance on the grounds that it violates the First and Fourteenth Amendments of the United States Constitution and the Liberty of Speech Clause of the California Constitution. Appellees then requested a preliminary injunction which the district court granted on November 5, 1997.
 
 
 25
 The district court rejected appellants'[3] argument for Pullman abstention, concluded that appellees were likely to succeed on the merits of their claim and found that appellants had conceded irreparable harm for purposes of the preliminary injunction. Relying on the California appellate decision in Alternatives and on the Ninth Circuit's decision in Carreras, the district court held that the ordinance was content-based under the California Liberty of Speech Clause. The district court's grant of the preliminary injunction rests on its finding that appellees were likely to succeed because § 41.59 is a content-based restraint of speech under California's Liberty of Speech Clause and because appellants did not dispute appellees' contention that the balance of hardships tips sharply in their favor and that they face irreparable injury. Appellants timely appealed the grant of the preliminary injunction to the Ninth Circuit. We have jurisdiction under 28 U.S.C. § 1292(a)(1).
 
 IV. The Need for Certification
 
 26
 The answer to the certified question will resolve a critical issue of whether the California Constitution's Liberty of Speech Clause grants greater protection to speech used in conjunction with solicitation than does the First Amendment of the United States Constitution. Under federal constitutional law, regulations of solicitation are reviewed as content-neutral restraints of speech. See, e.g., United States v. Kokinda, 497 U.S. 720, 730, 736, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). In contrast, the California appellate court decision in Alternatives and the Ninth Circuit opinion in Carreras hold that regulations of solicitation are reviewed as content-based restraints of speech under the Liberty of Speech Clause of the California Constitution.
 
 
 27
 In Alternatives, a California appellate court struck down an ordinance that banned door-to-door solicitation during evening and nighttime hours. 145 Cal.App.3d 436, 439, 193 Cal.Rptr. 384 (1983). The court reasoned:
 
 
 28
 Time, manner and place regulations must be applicable to all speech without regard to content. The challenged ordinance permits unlimited access by persons who wish to approach residents about random subjects, but it does not do this for persons or organizations soliciting funds (such as ACW). The ordinance discriminates on the basis of the content of a speaker's message to the extent that a person who literally solicits from residents is regulated but one who seeks only a receptive listener is not.
 
 
 29
 Id. at 450, 193 Cal.Rptr. 384 (citations omitted) (emphasis in original).
 
 
 30
 The Carreras court found that "Alternatives for California Women is most plausibly interpreted as independently grounded on the California Liberty of Speech Clause." 768 F.2d 1039, 1048 n. 21 (9th Cir.1985). Applying Alternatives, the court found that an ordinance requiring ISKCON to have a permit to solicit was content-based under the California Constitution. Id. at 1048.
 
 
 31
 The Alternatives and Carreras decisions preceded the United States Supreme Court decision in Kokinda. We must determine whether these opinions reflect the Supreme Court of California's interpretation of California's Liberty of Speech Clause, a critical issue in the appeal before us.
 
 
 32
 California's Liberty of Speech Clause provides greater protection for expressive activity than does the First Amendment but the California Supreme Court has not answered the question of whether the Clause provides greater protection to speech used in conjunction with solicitation. See Robins v. Pruneyard Shopping Center, 23 Cal.3d 899, 908, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), aff'd, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). There are no California Supreme Court cases that decide whether regulation of solicitation is content-neutral or content-based. But cf. People v. Fogelson, 21 Cal.3d 158, 165, 145 Cal.Rptr. 542, 577 P.2d 677 (1978) (noting that "[t]he state may, for example, reasonably regulate the time, place and manner of engaging in solicitation in public places"). Lower California cases present conflicting views.[4] Compare Xiloj-Itzep v. City of Agoura Hills, 24 Cal.App.4th 620, 29 Cal.Rptr.2d 879 (1994), with City of Fresno v. Press Communications, Inc., 31 Cal.App.4th 32, 36 Cal.Rptr.2d 456 (1994).
 
 
 33
 Appellants rely on Xiloj-Itzep to support the proposition that regulation of solicitation is content-based, while appellees quote City of Fresno for the opposite proposition. See also Savage v. Trammell Crow Co., 223 Cal.App.3d 1562, 1580 n. 6, 273 Cal.Rptr. 302 (1990) (noting in dicta that "the government may validly draw a distinction between distributing leaflets and soliciting donations"); Ulmer v. Municipal Court, 55 Cal.App.3d 263, 127 Cal.Rptr. 445 (1976) (noting that begging and soliciting for alms do not necessarily involve communication and therefore are not protected by the First Amendment).
 
 
 34
 In Xiloj-Itzep, a California court of appeal affirmed the denial of a preliminary injunction to halt the enforcement of a city ordinance prohibiting solicitation of persons travelling in vehicles. The court determined that the regulation was content-neutral. 24 Cal.App.4th at 636-37, 29 Cal.Rptr.2d 879. In City of Fresno, addressing both the United States Constitution and the California Constitution, a California court of appeal noted that "[a] restriction which is limited in effect to persons engaged in door-to-door 'peddling or soliciting' is content-based because it does not also apply to persons who go door-to-door merely looking for receptive listeners." 31 Cal.App.4th at 40, 36 Cal.Rptr.2d 456 (citing Alternatives, 145 Cal.App.3d at 448, 193 Cal.Rptr. 384).
 
 
 35
 Although we currently have under review the grant of a preliminary injunction, certification is proper because the challenge to the regulation is a facial one and so there are no additional facts relevant to the certified question to be litigated before the district court. The answer to the certified question may be determinative of the cause pending before this panel.
 
 
 36
 This court agrees to follow the answer provided by the California Supreme Court.
 
 V. Accompanying Materials
 
 37
 The clerk of this court has been ordered to provide all relevant briefs and excerpts of record with this request and to forward all under the official seal of the Ninth Circuit pursuant to Rule 29.5(c)-(d).
 
 ORDINANCE NO. 171664
 
 38
 An ordinance adding section 41.59 to Article I of Chapter IV of the Los Angeles Municipal Code to prohibit aggressive soliciting.
 
 
 39
 WHEREAS, it is the intent of the Council in enacting this Ordinance to improve the quality of life and economic vitality of the City, and to protect the safety of the general public against certain abusive conduct of persons engaged in solicitation, by imposing reasonable manner and place restrictions on solicitation while respecting the constitutional rights of free speech for all citizens, and
 
 
 40
 WHEREAS, the Council finds that an increase in aggressive solicitation throughout the city has become extremely disturbing and disruptive to residents and businesses, and has contributed not only to the loss of access to and enjoyment of public places, but also to an enhanced sense of fear, intimidation and disorder, and
 
 
 41
 WHEREAS, aggressive panhandling usually includes approaching or following pedestrians, the use of abusive language, unwanted physical contact, or the intentional blocking of pedestrian and vehicular traffic. The Council further finds that the presence of individuals who solicit money from persons at or near banks or automated teller machines is especially threatening and dangerous. Motorists also find themselves confronted by persons who without permission wash their automobile windows at traffic intersections, despite explicit indications by drivers not to do so. Such activity often carries with it an implicit threat to both person and property. People driving or parking on city streets frequently find themselves faced with panhandlers seeking money by offering to perform "services" such as opening car doors or locating parking spaces, and
 
 
 42
 WHEREAS, the Council further finds as abusive the solicitation of people in places where they are a "captive audience" in which it is impossible or difficult for them to exercise their own right to decline to listen to or to avoid solicitation from others. Such places include buses, subways, and trains; parking lots and structures; and indoor and outdoor dining areas. Restricting solicitation in such places will provide a balance between the rights of solicitors and the rights of persons who wish to decline or avoid such solicitations, and will help avoid or diminish the threat of violence in such unwarranted and unavoidable confrontations, and
 
 
 43
 WHEREAS, this law is timely and appropriate because current laws and city regulations are insufficient to address the aforementioned problems. The restrictions contained herein are neither overbroad nor vague and are narrowly tailored to serve a substantial governmental interest. Furthermore, in enacting this legislation, the Council recognizes the availability of community service and other sentencing alternatives, which may be appropriate remedies for violations of this law. The goal of this law is to protect citizens from the fear and intimidation accompanying certain kinds of solicitation that have become an unwelcome and overwhelming presence in the city.
 
 
 44
 NOW THEREFORE,
 
 
 45
 THE PEOPLE OF THE CITY OF LOS ANGELES DO ORDAIN AS FOLLOWS:
 
 
 46
 Section I. Chapter IV of the Los Angeles Municipal Code is hereby amended by adding a new Section 41.59 thereto, to read as follows:
 
 
 47
 SEC. 41.59. PROHIBITION AGAINST CERTAIN FORMS OF AGGRESSIVE SOLICITATION.
 
 
 48
 (a) Definitions. For purposes of this section:
 
 
 49
 (1)"Solicit, ask or beg" shall include using the spoken, written, or printed word, or bodily gestures, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services.
 
 
 50
 (2)"Public place" shall mean a place to which the public or a substantial group of persons has access, and includes, but is not limited to, any street, highway, sidewalk, parking lot, plaza, transportation facility, school, place of amusement, park, playground, and any doorway, entrance, hallway, lobby and other portion of any business establishment, an apartment house or hotel not constituting a room or apartment designed for actual residence.
 
 
 51
 (b) Aggressive Solicitation prohibited.
 
 
 52
 (1) No person shall solicit, ask or beg in an aggressive manner in any public place.
 
 
 53
 (2) "Aggressive manner" shall mean any of the following:
 
 
 54
 (A) Approaching or speaking to a person, or following a person before, during or after soliciting, asking or begging, if that conduct is intended or is likely to cause a reasonable person to (i) fear bodily harm to oneself or to another, damage to or loss of property, or (ii) otherwise be intimidated into giving money or other thing of value;
 
 
 55
 (B) Intentionally touching or causing physical contact with another person or an occupied vehicle without that person's consent in the course of soliciting, asking or begging;
 
 
 56
 (C) Intentionally blocking or interfering with the safe or free passage of a pedestrian or vehicle by any means, including unreasonably causing a pedestrian or vehicle operator to take evasive action to avoid physical contact;
 
 
 57
 (D) Using violent or threatening gestures toward a person solicited either before, during, or after soliciting, asking or begging;
 
 
 58
 (E) Persisting in closely following or approaching a person, after the person solicited has been solicited and informed the solicitor by words or conduct that such person does not want to be solicited or does not want to give money or any other thing of value to the solicitor; or
 
 
 59
 (F) Using profane, offensive or abusive language which is inherently likely to provoke an immediate violent reaction, either before, during, or after solicitation.
 
 
 60
 (c) All solicitation prohibited at specified locations.
 
 
 61
 (1) Banks and ATMs. No person shall solicit, ask or beg within 15 feet of any entrance or exit of any bank, savings and loan association, credit union, or check cashing business during its business hours or within 15 feet of any automated teller machine during the time it is available for customers' use. Provided, however, that when an automated teller machine is located within an automated teller machine facility, such distance shall be measured from the entrance or exit of the automated teller machine facility. Provided further that no person shall solicit, ask or beg within an automated teller machine facility where a reasonable person would or should know that he or she does not have the permission to do so from the owner or other person lawfully in possession of such facility. Nothing in this paragraph shall be construed to prohibit the lawful vending of goods and services within such areas.
 
 
 62
 (A) Definitions. For purposes of this section:
 
 
 63
 (i) "Bank" means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operated under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation.
 
 
 64
 (ii) "Savings and loan association" means any federal savings and loan association and any "insured institution" as defined in Section 401 of the National Housing Act, as amended, and any federal credit union as defined in Section 2 of the Federal Credit Union Act.
 
 
 65
 (iii) "Credit union" means any federal credit union and any state-chartered credit union the accounts of which are insured by the Administrator of the National Credit Union Administration.
 
 
 66
 (iv) "Check cashing business" means any person duly licensed as a check seller, bill payer, or prorater pursuant to Division 3 of the California Financial Code, commencing with section 12000.
 
 
 67
 (v) "Automated teller machine" shall mean any electronic information processing device which accepts or dispenses cash in connection with a credit, deposit, or convenience account.
 
 
 68
 (vi) "Automated teller machine facility" shall mean the area comprised of one or more automated teller machines, and any adjacent space which is made available to banking customers after regular banking hours.
 
 
 69
 (B) Exemptions. The provisions of subdivision (c)(1) shall not apply to any unenclosed automated teller machine located within any building, structure or space whose primary purpose or function is unrelated to banking activities, including but not limited to supermarkets, airports and school buildings, provided that such automated teller machine shall be available for use only during the regular hours of operation of the building, structure or space in which such machine is located.
 
 
 70
 (2) Motor vehicles and parking lots.
 
 
 71
 (A) Motor vehicles. No person shall approach an operator or occupant of a motor vehicle for the purpose of soliciting, asking or begging while such vehicle is located in any public place.
 
 
 72
 (B) Parking lots. No person shall solicit, ask or beg in any public Parking lot or structure any time after dark. "After dark" means any time from one-half hour after sunset to one-half hour before sunrise.
 
 
 73
 (C) Exemptions. Subdivision (c)(2) shall not apply to any of the following:
 
 
 74
 (i) to solicitations related to business which is being conducted on the subject premises by the owner or lawful tenants;
 
 
 75
 (ii) to solicitations related to the lawful towing of a vehicle; or
 
 
 76
 (iii) to solicitations related to emergency repairs requested by the operator or other occupant of a vehicle.
 
 
 77
 (3) Public transportation vehicles and stops.
 
 
 78
 (A) "Public transportation vehicle" shall mean any vehicle, including a trailer bus, designed, used or maintained for carrying 10 or more persons, including the driver; or a passenger vehicle designed for carrying fewer than 10 persons, including the driver, and used to carry passengers for hire.
 
 
 79
 (B) Any person who solicits, asks or begs in any public transportation vehicle, or within ten feet of any designated or posted public transportation vehicle stop, is guilty of a violation of this section if:
 
 
 80
 (i) He or she remains there after being asked to leave by the owner, driver, or operator of a public transportation vehicle; the agent of the owner, driver or operator of a public transportation vehicle; the owner or manager of a public transportation facility; the agent of the owner or manager of a public transportation facility; a member of a security force employed by the public transportation facility; or by a peace officer, as defined in Chapter 4.5 of Title 3 of the California Penal Code (commencing with Pen.Code, § 830); or
 
 
 81
 (ii) Within the immediately preceding 30 days, he or she engaged in a solicitation at that location and had been asked to leave by a person specified in subdivision (c)(3)(B)(i), above.
 
 
 82
 (iii) Subdivision (c)(3)(B)(ii) is not violated if a person who has been requested to leave enters the property within the designated period and solicits, asks, or begs with the express authorization of a person specified in subdivision (c)(3)(B)(i).
 
 
 83
 (4) Restaurants. Any person who solicits, asks, or begs in any outdoor or indoor dining area of a restaurant or other establishment serving food for immediate consumption is guilty of a violation of this section if:
 
 
 84
 (A) He or she remains there after being asked to leave by the owner, manager or supervisor of the restaurant or other food establishment; the agent of the owner, manager or supervisor of the restaurant; a member of a security force employed by the restaurant; or by a peace officer, as defined in Chapter 4.5 of Title 3 of the California Penal Code (commencing with Pen.Code, § 830), acting at the request of any of the persons specified in this subdivision; or
 
 
 85
 (B) Within the immediately preceding 30 days, he or she engaged in a solicitation at that location and had been asked to leave by a person specified in subdivision (c)(4)(A), above.
 
 
 86
 (C) Subdivision (c)(4)(B) is not violated if a person who has been requested to leave enters the property within the designated period and solicits, asks, or begs with the express authorization of a person specified in subdivision (c)(4)(A).
 
 
 87
 (d) Penalty. A violation of this Section is punishable as a misdemeanor or chargeable at the City Attorney's discretion.
 
 
 88
 (e) Severability. The provisions of this ordinance are declared to be separate and severable. The invalidity of any clause, sentence, paragraph, subdivision, section or portion of this ordinance, or the invalidity of the application thereof to any person or circumstance shall not affect the validity of the remainder of this ordinance, or the validity of its application to other persons or circumstances.
 
 
 89
 (f) Non-exclusivity. Nothing in this chapter shall limit or preclude the enforcement of other applicable laws.
 
 
 90
 Sec. 2. The City Clerk shall certify to the passage of this ordinance and cause the same to be published in some daily newspaper printed and published in the City of Los Angeles.
 
 
 91
 I hereby certify that the foregoing ordinance was introduced at the meeting of the Council of the City of Los Angeles JUN 25 1997 and was passed at its meeting of JUL 02 1997
 
 J. MICHAEL CAREY, City Clerk
 By /s/ Diane M. Titus
 Deputy
 Approved JUL 15 1997
 
 92
 /s/ Richard J. Riordan
 
 Mayor
 
 93
 /s/ Joel Waches
 
 
 94
 /s/ Richard Alarcon
 
 
 95
 /s/ Richard Alatorre
 
 Approved as to Form and Legality
 
 96
 /s/ James K. Hahn
 
 James K. Hahn, City Attorney
 By /s/ Earl E. Thomas JUL 7 1997
 
 97
 EARL E. THOMAS,
 
 Assistant City Attorney
 
 
 *
 Judge Betty B. Fletcher Presiding Judge of the certifying panel
 
 
 [1]
 The City of Los Angeles ordinance in question is attached
 
 
 [2]
 We refer to the parties as they appear before our court. Appellees are the respondents to the certification request
 
 
 [3]
 Appellants are the petitioners for the certification request
 
 
 [4]
 Similarly, federal district courts are reaching conflicting results under the California Constitution. Compare International Society for Krishna Consciousness of California, Inc. v. City of Los Angeles, 966 F.Supp. 956, 969 (C.D.Cal.1997) (holding that regulations of solicitation are content-based under the California Constitution per Alternatives and Carreras ), and Berkeley Community Health Project v. City of Berkeley, 902 F.Supp. 1084, 1090 (N.D.Cal.1995) (same), and Church of the Soldiers of the Cross of Christ of the State of California v. City of Riverside, 886 F.Supp. 721, 725 (C.D.Cal.1995) (same), with Doucette v. City of Santa Monica, 955 F.Supp. 1192 (C.D.Cal.1997) (upholding a regulation prohibiting "abusive solicitation" under the First Amendment with no discussion of the California Constitution)